# Portwood *vs* Outton's Adm'r. *et al.*

### ERROR TO THE MADISON CIRCUIT.

*Mortgages.    Contracts.    Liens.    Exhibits.*

JUDGE EWING delivered the opinion of the Court.

IN 1827, Lewis mortgaged to Charles W. Byrd, a tract of land in Jessamine, and a ferry on the Kentucky river, called the upper ferry, with the lands appurtenant, to secure the payment of $5000. In 1828, Lewis sold the ferry and lands adjoining, to Grimes and Matson, for $15,000, and took their notes for the consideration, some of which notes Lewis afterwards assigned to Outton, who sued Grimes and Matson for the amounts, who set up a defence, and after an angry contest for some time, Lewis, Matson, Grimes and Outton, in 1833, compromised, and entered into articles of agreement, by which the contract of sale was cancelled, and Lewis, to secure the payment of the notes which had been assigned to Outton, or rather the advances secured by the assignments, covenanted to make to him a mortgage upon the upper ferry and lands appurtenant, and on the tract of land in Jessamine. Lewis had, prior to this compromise, executed to Portwood a mortgage of the tract of land in Jessamine, and of various articles of personal property, to secure him in the payment of $1200, acknowledged to be owing. This mortgage was duly recorded, but there is no

CHANCERY.

Case 70.

*October* 26.

The case stated.

PORTWOOD
*vs*
OUTTON'S AD'R.
*et al.*

seal or scroll attached to the name of Lewis. A lower ferry on the Kentucky river, which belonged to Grimes, was by the compromise, to be surrendered up to Lewis, upon terms agreed on, and afterwards, by the consent or acquiescence of all parties and their attorneys, the lower ferry was to be secured to the benefit of Mrs. Lewis and her children, and a conveyance was accordingly made to Portwood as trustee, for their use. Lewis having failed to execute a mortgage to Outton, upon the upper ferry and tract of land, according to his covenant, Outton filed his bill against Lewis, Portwood, and Byrd's devisees, he having died, charging fraud in the mortgage to Portwood, and in the conveyance to him in trust for the use of Mrs. Lewis and children, &c. &c. and praying that the upper ferry and land agreed to be mortgaged to him, might be treated as executed, and the ferry and land sold to satisfy his demand. Lewis and Portwood answered, denying fraud, and Portwood made his answer a cross bill, praying for a foreclosure of his mortgage. Outton having died, and the suit being revived in the name of his administratrix, Portwood filed an amended answer and cross bill, in 1836, in which he alledges that the upper ferry and land adjoining, had been sold by a commissioner, since the last term, under a decree of the Mercer Circuit Court, obtained by two of the devisees of Byrd, in part satisfaction of their prior lien upon it, and he had become the purchaser for $1400, and had obtained the commissioner's deed for the same, which he exhibits; he also exhibits the decree of the Mercer Circuit Court, which appears to have been rendered at the July term, 1835. In a subsequent amended answer and cross bill, in which he sets up the same matter, and claims protection to his purchase, he says he will in due time produce the record and proceedings of the Mercer Circuit Court. There being no other parts of the record filed, but the decree and commissioner's deed aforesaid.

Decree of the
Circuit Court.

At the February term, 1839, the cause was submitted to the Court for hearing, and an interlocutory decree rendered, determining that Portwood did not acquire by his purchase, a fee-simple in the upper ferry, as Outton was not party to the suit in Mercer, but that Byrd's lien being

prior, he was entitled to be substituted in the place of the devisees, to their lien on the ferry, for the amount which he paid in the purchase; and subject to a deduction for rents, that sum should be first paid to him. His prior lien upon the tract of land and personal estate for $1200 and interest, was sustained. Outton's demands were also settled, and a lien allowed him upon the upper ferry and tract of land, subject to Portwood's prior lien; a commissioner appointed to assess rents, and make report, and the cause continued as to the claim set up by Outton, as a general creditor, to subject the lower ferry to sale in satisfaction of his demands.

In March, after this decree was rendered, one Ballard, claiming to have purchased the tract of land in Jessamine, under the Mercer decree in favor of Byrd's devisees, petitioned the Court to be admitted a defendant, and an order was made requiring Outton's administrator to make him a defendant, which was done, and at the June term he filed his answer, exhibiting a full copy of the record from Mercer, in which it appears that the suit was instituted in 1830, by Byrd's devisees, against Lewis, Matson and Grimes, and they were all served with process and had answered before the compromise, by which the sale to Grimes and Matson was cancelled, and Lewis stipulated to mortgage the tract of land and upper ferry to Outton, and was at that time in vigorous prosecution. The commissioner appointed in February before, also made his report at the same time. At the September term, no motion having been made to set aside the interlocutory decree, or to grant a re-hearing, the Court gave a final decree, carrying out the principles he had before settled with respect to the upper ferry, and dismissed Outton's bill as to the lower ferry, and continued the cause for further preparation as to the tract of land, and the claim of Ballard upon it. Portwood has brought the case to this Court, and Outton has assigned various cross errors.

The decree of Mercer, rendered in 1835, in favor of Byrd's devisees, two years after the institution of Outton's suit and to which decree he was no party, cannot affect Outton's rights; nor can Portwood's purchase under it invest him with the absolute title. He purchased while

*The lien of one who is no party to a proceeding and decree, under which property is directed to be sold, is not affected by such*

PORTWOOD
*vs*
OUTTON'S AD'R.
*et al.*

decree—nor can a purchaser under such decree thereby acquire the absolute title.

Outton's suit was pending for the ferry, and can hold it only subject to the decree that might be rendered. The decree in Mercer, which was the only part of the record that was exhibited before Outton's suit was submitted for hearing, does not show that the suit in Mercer was instituted or was pending at the time of the compromise, by which Outton acquired his equity, nor that it was even instituted before the commencement of Outton's suit. Of course Outton's rights could not be overreached or affected by that proceeding.

But it is contended, that it was the duty of the Court, before rendering a final decree, to look into the complete record filed by Ballard, in his branch of the case, and with a view to the protection of the tract of land purchased by him, and finding by this inspection, that the suit had been instituted and was pending when Outton acquired his equity, and that he being a *pendente lite* purchaser, held subject to that decree, that the interlocutor should have been set aside, and a decree rendered protecting Portwood's purchase. We think otherwise. The cause had been submitted to the Court, upon a full hearing, upon the records, papers and proofs then on file; the Court had decided it upon these proofs, and settled the rights of the parties, and could not be required to open the decree and grant a re-hearing, upon evidence afterwards exhibited by Ballard, for the protection of his claim to the land. It was proper for him to be heard on that branch of the case, as he had not yet been made a party, or heard as to his rights before. But it was otherwise with Portwood, he had submitted the cause to the Court upon the proofs on file, and the case had been fully heard as to his rights to the ferry.

It is not the duty of the Court to look beyond the papers filed by the parties to the suit, to ascertain whether there was or not a *lis pendens* that might operate on the rights in litigation—nor upon the coming in of a new party, after the rights of the previous parties had been settled, to look into the records and exhibits filed by such new party, and on such evidence change the rights as settled by interlocutory decree between the original parties.

—Tho' the Court *might*, for good cause, on motion of one of the original parties, have set aside the interlocutory decree, and reheard the case, but it would not have been the duty of the Court, if the evidence

Had he moved the Court to set aside the interlocutor, and grant a re-hearing, the Court would not have been bound to do so, as a matter of course, in order to admit other evidence of any kind, and ought not to have done so, unless for good cause shown. And if the new evidence offered was within the power of the paty, and by sheer negligence had not been filed before the hearing, it would certainly not have been the duty of the Court to grant the indulgence. But no motion was made, and

surely without such motion and cause shown, Portwood could not be indulged in thrusting into the papers new evidence, record or parol, and requiring the Court to look into it and change and modify his decree accordingly. If Portwood could not file new matter, and require the Court to look into and regulate his decree by it, without a motion for a re-hearing, much less could he require the Court, without such motion and re-hearing granted, to look into the record exhibited by Ballard, in another branch of the case and for his own benefit, and the protection of another tract of land than the ferry purchased by Portwood.

We perceive, therefore, no error in the decree, to the prejudice of Portwood.

Nor are any of the cross errors assigned by Outton, in our opinion, sustainable.

1. Though the decree in favor of Byrd's devisees, from the facts exibited on the hearing, cannot be made to over-reach the decree in this case, yet it is clear that the devisees lien upon the upper ferry, purchased by Portwood, is prior to the lien of Outton. Its priority and validity is acknowledged in the article of compromise, and Outton agreed to yield to its priority, in case the mortgage was executed to him by Lewis, and seeking to enforce his lien upon the property, to the same extent as if the motgage had been executed, he can obtain it upon no other terms than those to which he agreed to submit, in case the mortgage had been executed   Besides, there are other facts in the record, satisfactorily evidencing the priority of Byrd's lien, which we will not stop to enumerate. The devisees lien being elder and superior to Outton's, Portwood, to the extent of the money that he paid upon his purchase, in discharge of their debt, has an equitable right to be substituted to their prior lien, and to require that the money so paid and interest, may be first made out of the sale of the ferry, subject however to a deduction for rents and profits received by him from the same, which Byrd's devisees, had they received them, would have been required to account for in satisfaction of so much of their lien.

A subsequent incumbrancer purchasing at a sale under a decree in behalf of a prior incumbrancer, has a right in equity to be substituted to the extent of the am't of the money paid under such purchase, subject to a deduction for rents, if he have enjoyed the premises.

2. The debt of Byrd's devisees, secured by their lien, was in fact never paid, and the shuffling and changing of notes between Lewis, the administrator and debtor, and Grimes and Matson, with a view to its postponement, cannot have the effect to extinguish their equitable lien. Lewis, the debtor, stood in a double fiducial relation to them, and will not be permitted, in a Court of Chancery, by arrangements with others, with respect to his own debt, to lessen the security for its ultimate payment.

*A mortgage of land without a seal or scroll is not constructive notice—tho' it create an equity between the parties, and is good against a subsequent incumbrancer with notice.*

3. Though Portwood's mortgage upon the farm and other property had no seal or scroll, and was not a recordable instrumet witin the statute, and consequently the placing it on record was not constructive notice to subsequent purchasers and creditors, yet it transferred to Portwood an equity, and that equity is prior in time to the equity of Outton, which consists in a mere *covenant* to mortgage, and between mere equities, the elder must prevail, with or without notice. Outton had no more right to require notice of Portwood's equity than Portwood had a right to require notice of his. Moreover, we are satisfied, from the proof in the cause, that Outton had notice of Portwood's equity before his own was created.

*A creditor consenting to a provision made for the wife and children of his debtor, cannot afterwards disturb it.*

4. By the agreement or acquiescence of all parties, including their attorneys, the lower ferry, which was to be surrendered and transferred by Grimes, as a part of the compromise, was to be secured for the benefit of Mrs. Lewis and her children, as a pittance out of the wrecked estate of her husband, and the ample fortune which she had brought to him on their marriage; and the conveyance was accordingly made to Portwood for their use. Outton tacitly consented to, and acquiesced in this arrangement, and was content to receive and look to the provision which was made for him. Under these circumstances, a Court of Chancery will not aid him in disturbing this just and equitable provision made for a destitute wife and children.

The decree is therefore affirmed, as well upon the errors assigned by Portwood, as on those assigned by Outton's administrator.

*Owsley & Goodloe* for plaintiff: *Turner* for defendants.