### In re McNABB.

No. 7843.—Opinion Filed Nov. 12, 1919.

(Syllabus by the Court.)

**1. Attorney and Client — Disbarment Proceedings—Report of Referee.**

A referee in a disbarment proceeding is an officer of the court, and the court has full authority to supervise and control his report by setting it aside, or confirming or modifying it, as the facts and the law require.

**2. Same—Review—Report of Referee.**

The report of a referee appointed to take evidence and report his findings of fact and conclusions of law in a disbarment proceeding is not conclusive as to either the findings of fact or conclusions of law, but is accorded every reasonable presumption of being cor-

rect. The burden is on the party attacking it, but it is to be freely set aside by the court if found to be incorrect.

### 3. Attorney and Client—Disbarment Proceedings—Presumptions.

In a proceeding to disbar an attorney at law, such attorney is presumed to be innocent of the charges preferred and to have performed his duty as an officer of the court in accordance with his oath, and the evidence in support of the charges must satisfy the court to a reasonable certainty that the charges are true and warrant a judgment of disbarment.

### 4. Same—Sufficiency of Evidence.

Transcript of the evidence examined, and held: That the same supports the findings of the referee; findings and conclusions of the referee confirmed and the proceeding dismissed.

Disbarment proceedings, on petition of Robin Riley, against L. C. McNabb. Dismissed, on rehearing.

E. Bee Guthrey and W. D. Halfhill (T. F. Shackelford, of counsel), for petitioners.

Thomas J. Watts and McAdams & Haskell, for respondent.

JOHNSON, J. Robin Riley and another filed an original petition in this court against L. C. McNabb, Esquire, defendant, praying that the license heretofore issued to said McNabb authorizing him to practice as an attorney and counsellor at law in the courts of this state be revoked and his name stricken from the rolls of attorneys, and that he be forever barred from practicing law as an attorney in this state.

The petitioner alleged in substance that Riley had been appointed guardian of his two minor children, Sarah and McKinley, who were Cherokee freedmen, and who, as such, received allotments of land in the Cherokee Nation; that after the appointment he commenced proceedings to sell the lands of his minor children and employed defendant to represent him therein; that a sale was ordered and the allotment of Sarah sold for $600.00, and that of McKinley for $750.00, the purchase price of which was paid to the defendant as attorney for plaintiff; that said defendant kept said moneys and appropriated same to his own use, and failed to pay over same to plaintiff, but, instead, without first having obtained an order of court therefor, executed a deed to said minors of certain lands owned by him in lieu of the moneys received by him for the lands of said minors, which land so conveyed to said minors was encumbered by mortgages aggregating the sum of $1,280.00.

It is further alleged that plaintiff was and is an illiterate and uneducated person; that he can neither read nor write, and is un-accustomed to transacting business, all of which was well known to defendant at all times.

It is further alleged that plaintiff, Riley, had inherited the allotment of his deceased child, Alex, consisting of eighty acres, more or less, which at the same time and as part of the transaction just stated was sold by defendant for the sum of $800.00, which sum was paid to, and by him retained, in the same manner as the sum already mentioned, and that said defendant, knowingly, purposely, and corruptly kept all of said sums of money with the purpose and intent of cheating and defrauding said plaintiff and his minor children out of same.

It is further alleged that said defendant, as attorney for plaintiff Riley, prepared and filed reports of said Riley as guardian of said minor children wherein it was falsely stated that said guardian had invested in land for the use of said minor children the sum of $1,500.00.

As a further count it is alleged that said defendant was guilty of willful violation of the duties of attorney and counsellor in that while he was duly elected and acting county attorney in and for Sequoyah county he defrauded one Holloway out of $200.00 by representing to said Holloway, who was then under indictment in the United States court for the Eastern District of Oklahoma on the charge of selling whisky to an Indian, that said defendant in consideration of said sum did guarantee to said Holloway that said Holloway would not serve one minute in jail, but that said defendant would see the judge of said court and have the cause dismissed, and in the event said Holloway was confined in jail on account of said charge, would refund said sum with interest; that in violation of said agreement said defendant refused to represent said Holloway, who was confined in the United States jail on the plea of guilty.

As a fifth count it is charged that said defendant has been convicted of a misdemeanor involving moral turpitude.

A supplemental petition was filed on the 1st of December, 1915, wherein it was alleged that said defendant violated his duties as an attorney and counsellor in that during the year 1914, while he was the duly elected, qualified, and acting county attorney in and for Sequoyah county, he accepted employment as an attorney and counsellor for the defendant in a certain divorce suit pending in the superior court of Tulsa county, and filed answer and cross-petition in said action, wherein a final decree was entered award-

ing defendant the sum of $400.00 as alimony, which sum was paid to defendant, who remitted to his client the sum of $200.00, falsely and fraudulently representing to her that said sum was all that had been allowed.

Answer was filed by defendant denying each material allegation, and the cause was referred to the Hon. J. F. King, of Newkirk, with directions to make and report findings of fact and conclusions of law, who, in pursuance of the order of reference, heard the testimony and thereafter made and filed his report, in which it is found as follows:

As to the first three paragraphs of the petition, hereinafter called the first count and being the Robin Riley charges, your referee makes from the evidence the following findings of fact:

Sarah Riley and McKinley Riley, the minor children of the plaintiff, Robin Riley, were Cherokee freedmen and as such freedmen were allotted certain lands in the Cherokee Nation in what is now Nowata county, Oklahoma. They are now about 17 and 19 years of age, respectively. On the 10th day of March, 1909, the said Robin Riley was appointed by the county court of Sequoyah county, Oklahoma, the county in which they lived, guardian of the persons and estates of the said minors, and he duly qualified as such. If any lawyer prepared the petition for his appointment or filed the same, the evidence fails to show. Robin Riley is an uneducated, illiterate negro, unable to read or write, of not very much business experience, and is now about 58 years old. During all the time in this report mentioned, he lived on his farm and these minor children lived with him.

Some time in the month of September, 1910, Robin Riley conceived the idea of purchasing from the defendant sixty acres of Arkansas river bottom land, lying about one mile from his home and at that time belonging to the defendant. He had a friend, Sam Parker, an educated and intelligent negro, who was at that time justice of the peace in that county. He took Parker with him to the defendant's office, at that time at Vian, Oklahoma, to see about purchasing this sixty acres from the defendant. The defendant told him that there was a mortgage on the place of $1,000.00 drawing six per cent. interest and a commission mortgage of $250 that drew no interest until its maturity, and that he would sell the land to Riley for $3,000.00 less the amount of these mortgages. Riley told the defendant he would like to have the land on account of its being very close to his own allotment in the bottom there, but that he did not have the money

to buy it unless he could sell some of his and the children's land. Sam Parker advised Riley not to sell the minors' allotments and tried to keep Riley from selling them, for the reason he thought they were good investments to hold. Riley, however, insisted on buying the sixty acres, principally for the reason that it was only about a mile from his home and allotment and where he and his said children could see after it, and could work it, the land in Nowata county being so far away and rough land. Robin Riley was at this time the owner of the Alex Riley allotment, also in Nowata county, his deceased son's allotment. Riley, however, had made up his mind to sell these minors' allotments before negotiating with the defendant.

Riley requested the defendant to sell through the county court these allotments of his two minor children and asked defendant to hold the sixty acres at the price mentioned for him until he could sell them. The defendant, McNabb, told Riley that before he could do so, they would have to see the county judge, and McNabb, Parker, and Riley went to the county judge of Sequoyah county, Oklahoma, Judge Littlejohn, and laid the matter before him, the sale of the minors' lands, the object in selling them, and the purchase of the sixty acres. Judge Littlejohn expressed to them the opinion that he thought it was the proper thing to do, but that the deed to this sixty acres must be made direct to the minors. Riley agreed to take the land, McNabb accepted the employment, filed the petition on the guardian's case for the sale of these lands, conducted the proceedings as attorney for the guardian as to said sale, confirmation, and payment. The land of Sarah Riley sold for $600.00. The land of McKinley Riley sold for $750.00. The sales were confirmed by the court and deeds executed to the purchaser, Sam F. Wilkinson, and the money paid to McNabb. Riley also sold about the same time the Alex Riley allotment to the said Sam F. Wilkinson, for $800.00, this money also being paid to McNabb. The evidence fails to show that at the time Riley went to see McNabb about the purchase of this sixty acres of land and agreed to buy it, and at the time he employed McNabb to sell these minors' lands, any business relation existed between McNabb and Riley, or that McNabb had any influence over him. The sales were confirmed by the county court on the 12th day of December, 1910. Robin Riley and Sam Parker, representing Riley, shortly after went to McNabb's office and there Riley, in person and with the assistance of Parker, made a settlement with McNabb. McNabb

deducted the amount of the two mortgages on the sixty acres, $1,280.00, from $3,000.00, leaving $1,720.00 due him. He had in his hands $2,150.00 due Riley individually and as guardian, leaving a balance due Riley of $450.00. Riley directed McNabb to pay Parker $50.00, which McNabb did. McNabb also deducted out of this the court cost, attorney fees, taxes paid on the land and expenses of the guardianship proceedings, which were all paid, and paid the balance by check to Robin Riley. The evidence fails to show the amount of this last check. This settlement was satisfactory to Riley, and in accordance with his previous understanding and agreement with McNabb on December 12, 1910, McNabb and his wife executed their warranty deed for the sixty acres to the said minors, Sarah Riley and McKinley Riley, and put Robin Riley in possession of it as their guardian. Sam Parker was present during all of these negotiations between McNabb and Riley, and took part in them as representative of Riley. .

Your referee further finds from the evidence that this sixty acres of land at the time of the negotiations between McNabb and Riley for its sale, at the time of the execution of the deed to it from McNabb to these minors, December 12, 1910, was reasonably worth on the market, $50.00 per acre, or $3,000.00. The petition to the county court of Sequoyah county for the sale of these minors' allotments recites after the description of these allotments, "that it is necessary that the hereinbefore described portion of said real estate should be sold for the following reasons, to wit: To educate and maintain said minors and to re-invest the residue in lands situated in the county of the said minors' home that will yield greater income and can be managed at less expense." The next of kin and persons interested in the estate of Sarah Riley and McKinley Riley, filed in said court their written request that these lands be sold as prayed for in this petition, namely, Ellen Riley, Robin Riley, Frank Riley, Anna Briggs, nee Riley, Fanny Thomas, nee Riley. In the order of the county court directing the sale of these minors' allotments, it is recited:

"Now on this 21st day of October, A. D. 1910, there coming on for hearing the petition of Robin Riley as guardian of Sarah Riley and McKinley Riley, for an order authorizing the sale of the real estate described in said petition, and said petitioner appearing in person and giving testimony in support of said sale, and none appearing in opposition thereto, and it being proven to the judge of the court, that notice of this hearing has been given by publishing a copy of the order of hearing herein for four weeks in the Star Gazette, a weekly newspaper of general circulation in Sequoyah county, published at Sallisaw, in the issues of September 9, 16, 25 and 30, 1910, and that all the next of kin and persons interested in the estates of said minors have entered their appearance herein in writing, and asked that the prayer of this petition for the sale of the real estate be granted, waiving any and all notices of hearing thereof, and said matter being submitted to the court, and upon due consideration and examination of said petition, and after full hearing upon the same, and upon due consideration of the proofs offered in said matter, the court finds that the sale of that part of said real estate belonging to said wards mentioned in said petition, and hereinafter described, is necessary for the purpose of educating and maintaining said Sarah Riley and McKinley Riley, and to reinvest the residue in lands nearer the home of said minors, which is more profitable and is for the best interest of said wards."

After the sale of these lands, there was no application to the county court, or the judge thereof, for the investment of the proceeds of these minors' lands in this particular sixty acres of land. There was no order of said court, or judge thereof, authorizing the investment of said proceeds in this sixty acres, nor any approval of this sale to the minors. Your referee further finds that the said defendant did not at any time intend to cheat or defraud the said minors, nor the said Robin Riley, nor any of them. Your referee finds that the said Robin Riley did not rely upon any advice or recommendation by defendant as to the sale of said minors' land, or as to the purchase of the said sixty acres of land or to invest their said money, his own, or any part thereof therein, and was not influenced by the said defendant in any of the said transactions.

Your referee feels that the above is a complete finding of all the material facts shown by the evidence, under the charges contained in the first three paragraphs of the petition, the first count, the charge concerning Robin Riley and the minors.

But, in view of the liberality with which the courts seem to admit evidence in cases of this character and particularly as against the lawyer, your referee makes the following further findings of facts from the evidence under these charges.

The defendant purchased these sixty acres about the middle of August, 1910, for $420.00 cash, subject to these two mortgages and at a bargain. He was defeated for the nomination of county attorney at the primary election on August 2, 1910, and immediately became interested with others in the sale of land in this neighborhood. He went to

Arkansas and interested people in these lands who were able to buy, and who knew the value of Arkansas river bottom land, and this character of land advanced very rapidly in value from the time he purchased it until it was sold and conveyed to the minors. The sixty acres is good productive land with the exception of about 10 acres, which is a slough or head of a lake and overflows when the river is very high. About five acres of this can generally be successfully farmed, though Riley farmed almost the entire sixty acres, some years not raising anything in the slough or head of the lake because of high water. Most of this sixty acres was farmed at the time of the sale to the minors. It had a cabin, some fencing, and small improvements, all of little value, on it at the time of the sale.

A guardian's report as to McKinley Riley was filed in the county court of Sequoyah county on September 11, 1911, a copy of which is attached to the petition in this case, showing the receipt by the guardian of the above $750.00 for this land, being the total receipts shown and with the following charges:

| Items Paid Out. | Amount. |
|---|---|
| Dec. 12, 1910, taxes for years 1909 and 1910 | $47.00 |
| Dec. 12, 1910, court costs | 6.50 |
| Dec. 12, 1910, publishing fees | 6.75 |
| Dec. 12, 1910, attorney's fees to L. C. McNabb for selling land of ward | 75.00 |
| Appraisement of land | 5.00 |
| Expense of traveling in securing sale of land | 10.00 |
| Investment in land | 1,500.00 |
| Total amount paid out | $1,650.00 |

Recapitulation.

| Total amount received | $750.00 |
|---|---|
| Total amount paid out | 1,650.00 |
| Balance due | 800.00 |

A similar report is made as to Sarah Riley. Complaint is made of these items "investment in land" in each of these reports.

The evidence fails to establish that the defendant made out or had anything to do with either of these reports. Your referee finds that Robin Riley at the time of the purchase and conveyance of this sixty acres from McNabb to these minors, gave a part of this $800.00 from the sale of the Alex Riley allotment and invested in this sixty acres of land as a gift to his minor children, Sarah and McKinley Riley. At the time Riley was negotiating for the purchase of this land, he told McNabb that he intended to apply whatever rents he could get off the sixty acres and whatever rents he got off his own land in satisfaction of these two mortgages and that he thought he could pay five or six hundred dollars a year in this way on these mortgages, and that he could soon pay them.

Your referee finds that neither of these reports have been acted on by the county court of Sequoyah county or any of the judges thereof. Your referee finds that neither of the said reports were made for the purpose or with the intent to deceive any one. On October 28, 1914, suit was brought in the district court of Sequoyah county to foreclose the $1,000.00 mortgage above mentioned, by E. M. Ruby, the owner thereof, and on May 12, 1915, a decree of foreclosure was entered, foreclosing and barring all right, title and interest of the said minors, Sarah Riley and McKinley Riley, in the said sixty acres after sale thereunder by the sheriff, and on the 27th day of December, 1915, the sheriff sold the said land under said decree for $1,200 to the plaintiff therein, E. M. Ruby.

The said minors and the said L. C. McNabb were made parties defendant in that suit. Roy Frye was appointed guardian ad litem therein for said minors defendant and as such guardian he filed in said case a crosspetition against his co-defendant, L. C. McNabb, praying judgment against him for the sum of $2,000 with interest at the rate of 6 per cent. from December 12, 1910, and that said sale and conveyance of the said 60 acres to them be declared null and void, and of no force and effect, and that the same be cancelled and set aside, and that all the acts of the said guardian relative to the taking of said deed be repudiated, and for costs, on substantially the same ground as set forth in these charges in this case. To this petition the defendant McNabb filed an answer and the same is still pending and undetermined in the said court.

There had been several years of poor crops in the section of country in which this land lay, immediately preceding that in which this land was sold at sheriff's sale, times being hard, money scarce and buyers few. This, together with the fact that it was a forced sale, and possibly some question as to the title of these minors, though this was immaterial, explains the low price at which the land sold at sheriff's sale.

In the deed of McNabb to these minors there is an error in the description of part

of this land. This, however, was by the mutual mistake of the grantor and guardian. McNabb put the guardian in possession of the sixty acres actually bought and intended to be conveyed. In the foreclosure case, he filed a disclaimer to any part of the land and is and always has been ready and willing to correct this mistake.

### Second Count or Fourth Paragraph.

Under the fourth paragraph, or second count, of the petition your referee makes from the evidence the following findings of fact:

### Finding of Fact.

During all the year 1914, the defendant L. C. McNabb was the duly elected, qualified and acting county attorney of Sequoyah county, Oklahoma, and during said year Riley Cleveland was the assistant county attorney of said county. They occupied the same offices and were friends. Riley Cleveland took cases in the federal court, and what civil business he could get. McNabb assisted him in getting such business, and threw him such cases of this kind as he could, which was agreeable to Riley Cleveland. They loaned each other money and were each debtor and creditor of the other alternately. In the summer of 1914, Will Holloway was under indictment in the United States court for the Eastern district of Oklahoma, charged with selling whisky to an Indian. About the 1st of July, 1914, Will Holloway, in company with Albert McGowan and Claude Harrison, came to the office of L. C. McNabb. They mentioned the case to McNabb and he told them he did not takes cases in the federal court. Riley Cleveland's name was mentioned and McNabb and Harrison told of some cases that Cleveland had in the federal court and how successful he was with them. McNabb told about receiving letters from Mr. Linebaugh, the United States district attorney for the Eastern district of Oklahoma, asking information about whisky peddling around in that county and McNabb stated that he always gave him the information and that he was working with Mr. Linebaugh to put down whisky peddling, and read a letter from Mr. Linebaugh in which he (Mr. Linebaugh) stated how he was working to put down the liquor traffic and asking McNabb's assistance. This was done by McNabb in explanation of why he did not take cases in the federal court. Riley Cleveland was not present. No contract or agreement was entered into at this time. When Cleveland came back to the office McNabb told Cleveland about Holloway being there and about his case. On August 31, 1914, Will Holloway came into McNabb's office and asked for Cleveland. McNabb told him that he had gone to Long, about 15 or 20 miles from Sallisaw, and would not be back until night. Holloway spoke of his case and said he had some money for Riley Cleveland and it was understood and agreed between Holloway and McNabb that Holloway should leave with McNabb $200 to be turned over to Riley Cleveland as the fee for Riley Cleveland for representing him in his said case in the federal court, which McNabb assured him would be all right with Cleveland.

McNabb then and there wrote out and delivered to Holloway the following written receipt:

Sallisaw, Okla., 8-31-14.

"Received from Will Holloway the sum of ($200.00) two hundred dollars, as attorney's fee in the United States District Court, wherein said Holloway is charged with introducing whisky.

"(Signed) Riley Cleveland."

Holloway on the witness stand admits that McNabb gave him that receipt at the time he gave McNabb the $200. Admits that he read the receipt as McNabb wrote it, until McNabb got to the signature, when he did not read any more, with the possibility that he read the signature also, but did not pay any attention to that; but admits that he read all of the receipt but the signature there in McNabb's presence. He admits, however, that he took the receipt home with him and showed it to his wife and she called his attention to the fact that it was signed "Riley Cleveland" and he also admitted that he never called McNabb's attention to the fact that the receipt was signed Riley Cleveland.

Your referee finds from the evidence that this receipt expresses the truth. That Holloway paid the $200 to McNabb with the understanding and agreement with McNabb that he would turn it over to Riley Cleveland, as the fee to Riley Cleveland as his attorney in this case in the federal court, and that Holloway never had any contract or agreement with McNabb that McNabb would act as his attorney or any of his attorneys in his said case.

When Riley Cleveland next returned to the office, McNabb told him he got the case for him, told him what case it was, and told him he had collected the fee of $200 from the client Will Holloway, and asked Cleveland if he would let him have $175 of it, to which Riley Cleveland agreed, and he paid Riley Cleveland the remaining $25, McNabb at the time believing that Cleveland owed him more than that, and he wanted to get as much as he could of what Cleve-

land owed him. McNabb never represented Holloway in Holloway's case in the federal court at any time.

Riley Cleveland did act as Holloway's attorney in that case. Cleveland had the place of trial changed from Chickasha to Muskogee. Before Holloway's trial case came off at Muskogee, Holloway went to see Cleveland and insisted that Cleveland represent him in his said case, and called Cleveland's attention to this receipt.

Cleveland insisted upon and received from him an additional fee of $25. When the case came off at Muskogee, Holloway pleaded guilty, was sentenced to 90 days in jail and to pay a fine of $50. He paid the fine and served out his sentence.

There was no guarantee by the said McNabb to, or agreement with, the said Holloway that Holloway would not serve any time in jail, or that McNabb would see the judge of said court and have the case dismissed or the sentence suspended, or that in case the said Will Holloway was confined in jail on account of said charge, that McNabb would refund any part of the said fee, or interest thereon.

### Fifth Paragraph.

No evidence was introduced under the fifth paragraph of the petition.

### Supplemental Petition. Finding of Fact.

The Brown and McNabb families were acquainted with each other in Arkansas before they moved to Oklahoma. They became friends when both families lived at Vian, Oklahoma, and visited each other at their respective homes. Mrs. Brown and her married daughter, Mrs. Pearl Wilson, and Mrs. L. C. McNabb, the defendant's wife, were on apparently very friendly terms. Mrs. Peal Wilson and R. I. Wilson were not living together, she living at Vian, Oklahoma, and he living at Tulsa, Oklahoma. Mrs. Pearl Wilson desired to obtain a divorce from her husband and she and her mother spoke to the defendant about obtaining a divorce for her some time in the early part of the year 1914. He was then county attorney of Sequoyah county, Oklahoma, and explained to them that because of that fact he could not take the case, and recommended to them Riley Cleveland, then his assistant county attorney, as a lawyer to attend to this matter for Mrs. Wilson. The defendant arranged for a meeting between Mrs. Wilson and Mr. Cleveland at McNabb's office to consider the matter. She came to the defendant's office and he called in Mr. Cleveland and she there stated her case to them and told them they could have half of whatever alimony they could get out of her husband.

Cleveland advised her that she could not get a divorce, but that her husband could. Before anything else was done, her husband brought suit for divorce against her in the superior court of Tulsa county, Oklahoma. An answer was filed for her by Riley Cleveland in that case. Mrs. Pearl Wilson determined not to contest the divorce case provided she could settle the question of alimony by agreement outside of court. The wife of the defendant, because of her friendship for Mrs. Pearl Wilson and her mother, urged McNabb to assist her in securing alimony, which he promised his wife to do. He made about five trips from his home at Sallisaw to Tulsa, Oklahoma, in trying to locate property of Wilson and securing an agreement with him as to the amount of this alimony, and made several trips to Vian, the evidence does not show how many, to see Mrs. Pearl Wilson.

He finally entered into a contract with the husband, Robert I. Wilson, subject to the approval of Mrs. Wilson, by which it was agreed that Wilson should pay to his wife $400.00 alimony. He returned home from Tulsa, where the contract was made, to see Mrs. Pearl Wilson and it was agreed between her and the defendant that she would accept the proposition; that the defendant should collect the $400.00 and pay over to her $200.00, free of all expenses, to her, and that the defendant should retain $200.00 of it as his fee and expenses in the matter.

The alimony agreement was reduced to writing and signed by Mrs. Wilson and her husband. The divorce case was called for trial. Mrs. Wilson did not appear and made no contest. The defendant told the court that he was the county attorney of Sequoyah county, Oklahoma, in explanation of his not appearing in the case, and remained outside the bar during the hearing of the divorce case and took no part in the trial. The court granted the divorce and the question of alimony was settled as per this contract. The decree of divorce recites that the defendant appeared as attorney for Mrs. Wilson in that case. This was inserted in the decree without the knowledge or consent of McNabb and is true only to the extent that defendant conducted the negotiations with Robert I. Wilson on the question of alimony.

Your referee is of the opinion that the above is all that is necessary to the decision of this case.

### Conclusions of Law.

Your referee concludes as matter of law, that the defendant is not guilty of any of the charges set forth in either the petition or the supplemental petition herein, and should neither be disbarred nor suspended from the practice of law, and that he should

have judgment for his costs, and that he go hence without day.

To this report exceptions were filed.

As was said by this court in Re Reily, 75 Oklahoma, 183 Pac. 728:

"The referee in a disbarment proceeding is an officer of the court, and the court has full authority to supervise and control his report by setting it aside or confirming or modifying it as the facts and the law require." 23 R. C. L. 300; Knapp v. Aderbolt, 42 Ky. 247, 21 S. W. 1063.

The rule to be applied in considering the report was stated in Town of Grove v. Haskell, 31 Okla. 77, 116 Pac. 805, as follows:

"The report of the referee appointed to take the evidence and report the same to this court, with his findings of fact and conclusions of law, would not be conclusive on either. It should and would be accorded every reasonable presumption of being correct with the burden on the party attacking it, but to be freely set aside by the court if found to be incorrect."

As was further said in Re Riley:

"The serious consequences of disbarment should follow only where there is a clear preponderance of evidence against the respondent. In such proceedings the attorney sought to be disbarred is presumed to be innocent of the charges preferred and to have performed his duty as an officer of the court in accordance with his oath, and the evidence in support of the charges must satisfy the court to a reasonable certainty that the charges are true and warrant a judgment of disbarment." In re Sitton, 72 Oklahoma, 177 Pac. 555.

This case being on rehearing, we have read the report of the referee and transcript of the testimony with care, and we find that his findings of fact are supported by a preponderance of the evidence and his conclusions of law are correct. The exceptions to the findings and conclusions of the referee are overruled.

Therefore, the findings and conclusions of the referee are accordingly confirmed and the proceeding is dismissed.

OWEN, C. J., and BAILEY, HIGGINS, McNEILL, RAINEY, and KANE, JJ., concur. HARRISON and PITCHFORD, JJ., not participating.