## STATE ex rel. DALE et al. v. VERNOR et al.

No. 9979—Opinion Filed March 23, 1920.

Rehearing Denied Aug. 10, 1920.

Application to File Second Petition for Rehearing Denied Sept. 7, 1920.

(Syllabus by the Court.)

1. **Attorney and Client—Disbarment Proceedings — Reference — Report — Conclusiveness.**

A referee in a disbarment proceeding is an officer of the court, and the court has full authority to supervise and control his report by setting it aside, or confirming or modifying it, as the facts and the law require.

2. **Same—Presumption of Correctness.**

The report of a referee appointed to take evidence and report his findings of fact and conclusions of law in a disbarment proceeding is not conclusive as to either the findings of fact or conclusions of law, but is accorded every reasonable presumption of being correct. The burden is on the party attacking it, but it is to be freely set aside by the court if found to be incorrect.

3. **Same — Disbarment Proceedings — Presumption of Innocence.**

In a proceeding to disbar an attorney at law, such attorney is presumed to be innocent of the charges preferred and to have performed his duty as an officer of the court in accordance with his oath, and the evidence in support of the charges must satisfy the court to a reasonable certainty that the charges are true and warrant a judgment of disbarment.

4. **Same—Judgment of Suspension—Sufficiency of Evidence.**

Transcript of the evidence examined, and held, that the same supports the findings of the referee as the same are modified by this court, and as so modified they are confirmed, and judgment of suspension of the respondents rendered accordingly.

Disbarment proceedings by the State, on the relation of Frank Dale and others, commissioners, against Vilas V. Vernor and Ed. K. Brook; Phil D. Brewer, referee. Report of referee confirmed and respondents suspended from practicing for six months.

E. L. Fulton, special attorney for relators.

S. M. Rutherford and Neff & Neff, for respondents.

JOHNSON, J. This is an original action commenced in this court by the state of Oklahoma, on relation of Frank Dale, W. J. Horton, and D. W. Madden, commissioners appointed by this court to investigate charges preferred against the defendants and others, by petition praying that the said defendants and each of them be permanently disbarred from the practice of law in the state of Oklahoma, which petition alleges in substance as follows:

"That during all the times hereinafter mentioned said Vilas K. Vernor and [Vilas V. Vernor] and Ed. K. Brook were duly licensed and practicing attorneys in the state of Oklahoma; that each of said defendants reside at Muskogee in said state; that on and prior to the 31st day of May, 1917, one Stella Mason, formerly Stella Manuel, was a minor residing in the city of Washington, D. C., and had theretofore been married to one Isaac Mason, and as a result of said marriage there had been born one child at that time aged about one year old; that said Stella Mason from inheritance became possessed of valuable real estate situated in the county of Okmulgee, state of Oklahoma, and which was highly valuable by reason of oil and gas deposits, and said properties were under the care of a guardian who resided in Muskogee county, Oklahoma; that the title to said properties had long theretofore been established in said Stella Mason, and on May 21, 1917, at midnight of said date she would reach the age of 18 years; at which time she would be entitled to receive from the hands of the guardian all of the properties hereinbefore mentioned; that said defendants, Vilas K. Vernor and Ed. K. Brook, well knowing that said Stella Mason would, upon the 21st day of May, 1917, reach the age of her majority and upon said date become possessed of properties hereinbefore referred to, conceived the idea of getting control of the properties belonging to said Stella Mason and using their offices as attorneys to exploit and rob said estate, and for the purpose of carrying out said plan so formed as aforesaid induced one A. G. W. Sango, a colored lawyer of doubtful reputation residing in the city of Muskogee, to undertake to bring from the city of Washington, D. C., to the city of Muskogee, said Stella Mason in order that they might by devious and sundry methods, more particularly hereinafter described, procure contracts with said Stella Mason which would give them an opportunity to further their purpose of exploiting said estate for their benefit; that in pursuance to said arrangement with said Sango, said Sango went to the city of Washington, D. C., accompanied by other parties and by false and misleading statements to the effect that Isaac Mason, the husband of Stella Mason, would rob said Stella Mason of all her property unless she

left him, and further statement to the effect that it was necessary for Stella Mason to go to the city of Muskogee, state of Oklahoma, in order to receive her property and interest in her estate, and that it would be necessary for her to employ some strong and influential lawyers to protect her interest in order for her to come into possession of her estate, said Sango, carrying out the purpose of said Vilas K. Vernor and Ed. K. Brook to induce Stella Mason to leave Washington, D. C., and to go to the city of Muskogee, Oklahoma, that said Sango in the furtherance of said design and with the knowledge of Vilas K. Vernor and Ed. K. Brook, defendants herein, upon the arrival of said parties at Muskogee, placed the said Stella Mason in a hotel in said city of Muskogee, where she, together with her husband who had insisted on coming with her to Muskogee, took up their abode; that they arrived at Muskogee, about May, 8, 1917; that immediately upon the arrival at Muskogee, and for the purpose of carrying out more fully their design and purpose, said defendants, together with one J. Coody Johnson, a disreputable colored attorney, began a systematic course of effort to induce Stella Mason to separate from her husband, Isaac Mason, and procure from him a divorce; that said Sango, under an agreement hereinbefore mentioned under which he went to the city of Washington, D. C., for the purpose aforementioned, was to become a party to a contract to be entered into upon the part of Stella Mason on one side and Vilas K. Vernor and Ed. K. Brook, defendants herein, and A. G. W. Sango on the other side, by which, and under which an employment of said attorneys was to be made giving to said attorneys control over the property belonging to the said Stella Mason, the control of which would come to her upon reaching her majority; that said Vilas K. Vernor and Ed. K. Brook, defendants herein, together with said Sango and said Johnson, in the prosecution of their designs induced said Stella Mason to leave her husband and go to another place in the city of Muskogee, where she was kept and held in order to prevent her husband, Isaac Mason, from in any manner seeing her, and in carrying out said purpose guards were employed by Vilas K. Vernor and Ed. K. Brook, and said Sango, and said Stella Mason was told that it was necessary to have her guarded in order that the husband, Isaac Mason, would not undertake to steal their child; that Issac Mason, being desirous of continuing the marriage relationship between himself and wife and having done nothing whatever to induce his wife to leave him, undertook to visit and confer with his wife while she was so held under guard as aforesaid, and upon his going to said premises in the afternoon and in a proper manner undertaking to confer and consult with his wife, he was, by a sham and groundless complaint made by said Sango, caused to be arrested by the city authorities of Muskogee and thereby, and in

the manner aforesaid, being prevented from conferring and consulting with his wife.

"Your relators further state that shortly prior to midnight, May 21, 1917, at the time when said Stella Mason would arrive at her majority, said defendants, Vilas K. Vernor and Ed. K. Brook, and said Sango, had prepared a written contract to be signed by said Stella Mason as the party of the first part, and Vilas K. Vernor and Ed. K. Brook, as parties of the second part, and arranged with said Sango and other parties to have said Stella Mason at the office of Vilas K. Vernor to meet said Vernor and said Brook, and execute the contract, and in pursuance to said plan, and as a result of said plan said Stella Mason was taken to the office of said Vilas K. Vernor where she met said Vernor and Brook and other parties acting in the interest of said defendants Vernor and Brook, and was there induced to sign a contract of employment whereby she undertook to turn over to said Vernor and Brook her property interests, a true copy of which said contract is attached hereto, made a part hereof and marked exhibit "A'; that under the terms of said contract among other things it was stipulated and agreed that said contract should run for a period of five years and said Vernor and Brook for their legal services should receive as compensation the sum of $5,000.00 per annum, payable yearly and in advance, and that they should become and remain during said period of time the sole attorneys of said Stella Mason and should have sole charge of any litigation which might arise in matters growing out of her property interests, and your relators state that at the time said contract was entered into said Stella Mason had no litigations pending and had no reason to believe or expect litigation growing out of her right of possession to the estate he was about to take over; that there were no unsettled matters involved in the procurement by her of all of the estate to which she was entitled; that the control of said estate was at that time pending in the county court of Muskogee county, and theretofore had been handled and conserved by a guardian, who was under bond and who was bound to account for and turn over to her the entire interest in said estate to which she was entitled; that at the time, to wit, just after midnight, May 21, 1917, when this contract was entered into at the office of said Vilas K. Vernor, said Sella Mason was not represented by her guardian or any other person who was competent and qualified to act as a friend or advise her in her behalf, and the purpose of inducing her to go to the office at midnight and enter into said contract was as your relators allege and aver to take an undue and unconscionable advantage of her ignorance, of her lack of skill and experience in the handling of her business affairs, and your relators further allege that said contract was unconscionable in its terms in this, to wit: That it exacted a compensation beyond any probable needs; that said defend-

ant attorneys in procuring said contract were guilty of grossly unprofessional conduct, highly prejudicial to the standing and reputation of the bar, and were guilty of practicing fraud and deceit upon said Stella Mason, and did procure said contract for the purpose of permitting them to unlawfully and corruptly exploit the estate and property of said Stella Mason.

"And further your relators say that in the carrying out of the design to exploit said estate as hereinbefore mentioned said defendants applied and appropriated to their individual use $5,000.00 of the money of said Stella Mason, and to secure the balance of said sum of $25,000.00 immediately after procuring said contract caused the same to be filed of record at Okmulgee in Okmulgee county, Oklahoma, the county in which all of the estate of said Stella Mason was located, thereby encumbering said estate with an instrument in the nature of a mortgage and placing a cloud upon the title of said Stella Mason in and to all her said estate, all of which was done in furtherance of the unlawful and unprofessional purpose of said defendants as herein before mentioned in the procurement of said contract, and your relators say that said conduct was unethical, grossly unprofessional and highly prejudicial to the profession of law and standing of the legal fraternity, and done and performed by said defendants with the view to unlawfully and corruptly procure from said estate moneys to which they were in no manner entitled, and for their conduct your relators ask that said defendants and each of them be permanently disbarred from the further practice of law in the state of Oklahoma.

"Second Cause of Action.

"For a further and second cause of action against the said defendants, Vilas K. Vernor and Ed. K. Brook, your relators state that they make all of the allegations of the first cause of action which are pertinent to this the second cause of action a part of said second cause of action to the same extent as if fully set forth and repleaded herein, and further allege:

"That on or about the 28th day of May, 1917, one Isaac Mason, the husband of Stella Mason, commenced an action in the county court of Muskogee county, Oklahoma, wherein he sought to have Stella Mason adjudged to be an incompetent and to have a guardian appointed to conserve her estate, and employed as his attorneys for the prosecution of said action a firm of lawyers, to wit, Stuart & Brown, and one S. V. O'Hare, all attorneys at law, regularly licensed and practicing in Muskogee and residing in said city; that thereafter and on or about the 31st day of May, 1917, said Vilas K. Vernor in conjunction with said defendant, Ed. K. Brook, pretending to represent said Stella Mason as her attorneys, and knowing that said action above referred to had been commenced by said Isaac Mason, and knowing also that said

Stuart & Brown and S. V. O'Hare were his attorneys, induced the said Isaac Mason to go to the office of said Vilas K. Vernor and in the absence of his attorneys, Stuart & Brown, and S. V. O'Hare, and in disregard of their duties towards said last named attorneys, and without their knowledge or consent, and in their absence represented to said Isaac Mason that the cause of action which he had instituted was one which could not be maintained, and stated to said Isaac Mason that he must dismiss said action and that it was dangerous for him to attempt to stay in the city of Muskogee or state of Oklahoma, and that he could be arrested if he remained in said city and state, and by said threats and intimidations, and by holding out to him the promise of the payment of the sum of $3,000.00 by way of compromise between himself and wife, did induce the said Isaac Mason to prepare for filing a written dismissal of said action so brought as aforesaid against his wife to declare her an incompetent and to have a guardian appointed to conserve her estate, and procured from the county judge of Muskogee county a large sum of money, the exact amount being unknown, of the funds of said Stella Mason and paid to said Isaac Mason the sum of about $2,000.00 of said sum so procured, and induced said Isaac Mason to undertake to immediately leave the city of Muskogee, and secrete himself so that his attorneys, Stuart & Brown and S. V. O'Hare, would have no knowledge of his whereabouts and would be unable to procure said Isaac Mason to have him rescind his action in the dismissal of said cause.

"Wherefore, your relators pray that said defendants and each of them be permanently disbarred from the practice of law in the state of Oklahoma.

"Third Cause of Action.

"For a third and further cause of action against said defendants and each of them your relators state that they make all of the allegations in the first and second causes of action a part of this the third cause of action as fully and complete as if set forth herein and repleaded, and further allege:

"That on or about the 28th day of May, 1917, in the city of Muskogee, state of Oklahoma, said defendants for the purpose of obtaining an unlawful and unprofessional advantage over one Isaac Mason, induced one C. Benjamin Jefferson to undertake to act as attorney of said Isaac Mason in the procurement of a dismissal of an action theretofore brought by said Isaac Mason against Stella Mason to have her declared an incompetent and to have a guardian appointed to conserve her estate and at the time of the procuring of said C. Benjamin Jefferson to act as aforesaid, said defendants well knew that said Isaac Mason was represented in said litigation by competent and reputable attorneys, to wit, Stuart & Brown, and S. V. O'Hare, and also well knowing that said Stuart & Brown and S. V. O'Hare, if called upon,

would not consent or consider the question of a dismissal of said action so brought by said Isaac Mason as aforesaid; that in order to procure the services of said C. Benjamin Jefferson, said defendants agreed with said C. Benjamin Jefferson that they would not resist the application of said Jefferson for a large allowance to him of a guardian's fee in the handling of the estate of Stella Mason, said Jefferson being the guardian of the estate, and further agreeing with said Jefferson that they would assist him in procuring from said Isaac Mason a large fee under the pretense that he was acting as Isaac Mason's attorney; that said Jefferson in pursuance to said purpose of inducing said Isaac Mason to come to the office of Vilas K. Vernor, there met said Isaac Mason and together with said Jefferson, and in the absence of Isaac Mason's attorneys, and after being advised by said Isaac Mason that he wanted to send for his attorneys, by threats and intimidation and promises of payment of money, to wit, the sum of $3,000.00, induced the said Isaac Mason to sign a dismissal of the action pending in the county court against his wife to declare her an incompetent and to have some person appointed as guardian of her estate, and procured from the county court, ostensibly for the purpose of compromising the action between Isaac Mason and Stella Mason and settling their property rights and differences, the sum of $3,000.00, claiming that said sum was to be paid to Isaac Mason, that the money was taken to the office of Vilas K. Vernor and turned over to said Jefferson, he retaining for his alleged professional services in procuring said compromise the sum of $1,000.00, and your relators state that said defendants Vernor and Brook well knew at that time that said Jefferson was not the attorney who brought said action for said Isaac Mason, and well knew that said Stuart & Brown and S. V. O'Hare were representing said Isaac Mason in said litigation, and that they were reputable attorneys and that they would resist any action upon the part of said defendants in bringing the dismissal of said action, and well knew that said Jefferson was not in fact properly representing said Isaac Mason in said settlement and well knew that they were taking unconscionable advantage of said Isaac Mason in inducing him to dismiss said action, and well knew that they were acting in an unprofessional way towards reputable and competent attorneys.

"Wherefore, your relators ask that said defendants and each of them be permanently disbarred from further practicing law in the state of Oklahoma.

"Fourth Cause of Action.

"For a further and fourth cause of action against said defendants and each of them your relators state that they make all of the allegations of the preceding and foregoing causes of action in so far as they are pertinent a part of this the fourth cause of action

as if fully set forth and repleaded herein, and further allege:

"That on and prior to May 21, 1917, one Stella Mason, formerly Stella Manuel, a minor, was possessed of a large and valuable estate consisting of oil and gas lands and the products thereof, located in Okmulgee county, state of Oklahoma; that her property interests in the estate were under the charge of a guardian, one C. Benjamin Jefferson, and said guardianship proceedings were pending in the county court of Muskogee county, Oklahoma; that she became of age at midnight, May 21, 1917; that all of her property interests were under the charge of said guardian and the county court of Muskogee county, Oklahoma; that there were no suits pending against said guardian or minor, and the estate was in no manner involved in litigation; that there were no reasonable grounds to apprehend litigation growing out of the affairs of said estate or the interest of said minor in said estate; that notwithstanding such fact, said defendants, as hereinbefore set forth, undertook by fraudulent and deceitful methods to have themselves appointed, under the contract hereinbefore referred to and made a part hereof and marked exhibit 'A', attorneys of the property interests and affairs of said Stella Mason, and as hereinbefore set forth did procure a contract from her giving to said defendants for a period of five years the sum of $5,000.00 per annum payable annually in advance as a fee and consideration running to them to look after her property interests and any litigation which might arise in the future; that in carrying out said contract and with the design of exploiting said estate said defendants wrongfully appropriated to themselves $5,000.00 of the moneys of said estate, and wrongfully and fraudulently entered into the agreements and arrangements with other parties hereinbefore mentioned to pay said parties unlawfully from the funds of said estate large sums of money and in carrying out said design fraudulently and purposely exploited said estate, and used of the funds of said estate in various ways which were unnecessary to properly conserve said estate, the sum of approximately $15,000.00, which expenditures from the funds of said estate were unnecessary and wasteful and known, or should have been known to have been unnecessary and wasteful by said defendants; that said sums of money so paid out as aforesaid were done in furtherance of their own scheme and plan and to aid therein said scheme and plan of exploiting for their own advantage the funds of said estate."

Defendants filed their answer, denying the material allegations contained in the petition, except they admit the making of the contract, a copy of which was attached to the petition, and alleging that the services proposed to be rendered were fairly and reasonably worth the amount agreed to be paid therefor.

The cause was referred to the Hon. P. D. Brewer, of Oklahoma City, with directions to make a report of findings of fact and conclusions of law, who, in pursuance of the order of reference, heard the testimony, and thereafter made and filed his report, in which it is found as follows:

"Findings of Fact.

"1. The charges resulting in this petition for disbarment against respondents Vilas K. Vernor and Ed. K. Brook, grew out of certain relations and contracts they had with one Stella Mason; and your referee finds that the said Stella Mason's maiden name was Stella Manuel. That she was a negro orphan girl during the year 1915, owning some land in the Creek Nation under oil and gas lease to the Prairie Oil & Gas Company, who developed the same and discovered large quantities of oil therein. That one C. Benjamin Jefferson, a colored lawyer, was the duly appointed, qualified and acting guardian of said Stella Mason and of her estate. That about June, 1915, the said Stella Mason was taken to the city of Washington, D. C., where she met and shortly thereafter married one Isaac Mason. That the said Isaac Mason was a colored man of fair intelligence, who had attended school at Howard College and was at the time of his marriage and thereafter, when mentioned herein, employed in some clerical capacity in the United States Treasury Department at Washington, D. C. That in 1916, a child was born to the said Isaac Mason and Stella Mason. That the said Stella Mason, nee Manuel, became of age at midnight on May 20, 1917. That prior to May 1, 1917, Lula Hendricks, a half-sister of Stella Mason, and other colored people and relatives from Oklahoma, together with a colored lawyer, one Coody Johnson, visited the Masons at their home in Washington, D. C., the said Lula Hendricks probably making more than one trip before the said May 1, 1917. On her last trip before said date, the presence of Lula Hendricks there and her association with Stella Mason seems to have become objectionable to Isaac Mason and possibly others, and she was notified to leave there. The evidence as to just how this came about is obscure, but she returned to Oklahoma. Thereafter and about May 1, 1917, she saw one A. G. W. Sango, a colored lawyer of Muskogee, Oklahoma, or he saw her, at any rate it was arranged between Lula Hendricks and her husband, Will Hendricks, and the said A. G. W. Sango, that they would all three go to Washington City. The said Sango borrowed the money to pay the expenses of the three on the trip. They went to Washington, D. C., and prevailed upon Stella Mason to return to Oklahoma, claiming to her that she should be in Oklahoma at the time of arriving at her majority so as to have an accounting with her guardian and be there to receive her estate from him. Her husband, Isaac Mason, determined to accompany them and did so. The party arrived in Mus-

kogee, Oklahoma, about May 10, 1917, and on the day after their arrival, Mason and his wife obtained board and lodging with a colored woman named Eliza Bailey, Lula Hendricks and her husband being with Stella practically all of the time. After a few days at Eliza Bailey's, Stella became estranged from her husband, Isaac Mason, and he was practically compelled to leave said boarding house, at least, he did so and went elsewhere to stay in Muskogee. Two or three days before Stella was to become of age, on May 20, 1917, she was sent or went to the house of a colored doctor named Smith in Muskogee to stay, and the colored lawyer, Sango, put a man at the Smith home to guard the house for the purpose, as Sango claims, of protecting Stella from her husband, Isaac Mason.

"The respondents, after their contract with Stella, hired a guard to stay where she was staying. That while Stella was at the Smith home, Isaac Mason went there in an attempt to see his wife; he was refused admittance, but heard Sango talking in the room with other colored people. In the meantime, Isaac Mason heard Sango call the police. Mason then waited in the vicinity until the policemen arrived, when he was taken to jail, where a colored friend made a small cash deposit and obtained his release. Isaac Mason was never prosecuted on this charge. A few days before May 20, 1917, Lula Hendricks and her husband, Will Hendricks, and Stella Mason visited the office of the respondents herein and began negotiating with them regarding employing them to represent Stella and her estate.

"The proof shows that Stella went to the office of respondent Vernor on Saturday before May 20, 1917; that on Sunday Stella went away from Muskogee, Oklahoma, to Taft, Oklahoma, and returned to Muskogee on Sunday night, May 20, 1917, but before going to Taft it was arranged between Stella, her sister, her brother-in-law and other colored friends and associates and also with Mr. Vernor and Mr. Brook, the respondents, that Stella would go to the office of respondent Brook immediately after midnight on May 20, 1917, for the purpose of negotiating and entering into a contract for the employment of these respondents. That upon returning from Taft that night to Muskogee, these colored people, including Stella, went to respondent Brook's office, where they were shown a typewritten contract already prepared, employing respondents as Stella's attorneys. This contract was discussed to some extent and read and shortly after midnight and within an hour after she became of age, executed between Stella and the respondents. The colored lawyer Sango was not at this meeting; neither was Isaac Mason, Stella's husband, there. This contract may be found commencing at page 23 of the transcript, and, in substance, is a contract of employment whereby Stella Mason employed the respondents herein jointly and severally as her sole and only attorneys at law for a

term and period of five years from its date for the sum of $5,000.00 for each and every year thereof, payable annually in advance. That said contract by its terms was in such form as to constitute a mortgage on the oil producing lands of Stella Mason to secure the full and faithful payment of the $25,000.00 provided therein, the same to be a first lien on the land and to be capable of enforcement as a mortgage and this document at about 9 o'clock in the morning of May 21, 1917, after her signing it, after midnight on the same morning at Muskogee, was filed for record in Okmulgee, Okmulgee county, Oklahoma, where said lands were situated.

"2. At the time of the contract between Stella Mason and the respondents herein, her guardian, C. Benjamin Jefferson, had in his possession of liquid assets belonging to her estate approximately $67,000.00, the same consisting of mortgages, notes, time deposits in banks and other securities, in addition to the lands which were producing oil. That Stella's estate, at that time, was of the value approximately of $115,000.00 to $135,000.00, but under the evidence, the respondents, at the time of making the contract, believed the estate to be of much greater value. That within a very short time after said contract of employment of respondents, Stella's guardian, C. Benjamin Jefferson, went with the respondents to the judge of the county court of Muskogee county, Oklahoma, he being a brother of the respondent Vernor, and turned over into the judge's keeping, such assets of the estate as were subject to delivery, such as notes, mortgages and time certificates of deposit and filed his final report as guardian and on or about May 25, 1917, certificates of deposit aggregating $20,000.00 were turned over to Stella Mason or her attorneys, the respondents herein. These certificates were converted into cash and between the dates of her becoming of age, on May 21, 1917, and June 1, 1917, Stella Mason had disposed of these funds in substantially the following manner: $5,000.00 to the respondents for their first yearly payment; $4,000.00 to C. Benjamin Jefferson, her guardian; $1,500.00 to other attorneys who had attended to some matters for the estate; $3,000.00 in settlement with Isaac Mason; nearly $2,000.00 for an automobile and repairs; nearly $1,000.00 for furniture. So that, within a very short time, approximately within two weeks, after becoming of age, she had received and disposed of all of this $20,000.00 turned over to her, except a few hundred dollars, and had placed a lien upon her oil producing lands, as above stated. The $4,000.00 paid to Jefferson, her guardian, was upon the advice of respondents and was by way of compromise of a claim of $5,000.00 he had put in against the estate under the contention that he was entitled to extra compensation for services rendered therein, although he had been allowed payment for his services up to and including February 17, 1917, immediately prior to his receiving this sum about the 26th of May, 1917.

"3. I find from the evidence that shortly after May 21, 1917, Isaac Mason filed a petition in the county court of Muskogee county, Oklahoma, asking that a guardian be appointed for his wife, Stella, on the ground of her incompetency and inability to handle her estate; that in this proceeding, a firm of lawyers, Brown & Stuart, and S. V. O'Hare represented Isaac Mason. That upon learning of this proceeding, the respondent Vernor placed what funds Stella Mason had remaining, in his individual name in the bank, as he explained, for the purpose of preventing them being tied up. That about May 31, 1917, and after this petition for guardianship was filed, Isaac Mason was called on the telephone by C. Benjamin Jefferson; he went to Jefferson's office and employed Jefferson to represent him and went with him to respondent Vernor's office, where some kind of a settlement was effected with Isaac Mason whereby Vernor paid Mason $3,000.00 in money out of Stella Mason's estate and had Stella Mason convey to Isaac Mason a half interest in a house in Washington, D. C., and in an automobile, and in the terms of which settlement Isaac Mason entered into a stipulation for the dismissal of the guardianship proceedings. To effectuate this settlement, the respondent Vernor had agreed to pay C. Benjamin Jefferson a fee of $500.00. After the respondent Vernor had paid Isaac Mason the $3,000.00 in an inner room, Jefferson was in another part of the office, where he met Mason with the money and claimed one-half of it, as his fee in representing him as against Stella, his wife. Some argument and controversy arose in the matter, but Isaac Mason paid C. Benjamin Jefferson $1,050.00 of the money, in $50.00 bills and Isaac Mason was advised by both respondent Vernor and C. Benjamin Jefferson that the best thing he could do, now that he had settled, was to take the train and leave the state. In the meantime and before Isaac Mason received the money, he had gone with the respondent Vernor to the office of the county judge of Muskogee county, Oklahoma; they had filed a stipulation dismissing the guardianship proceedings in open court, the judge taking the bench for the purpose of hearing the application and upon hearing it, dismissed the petition for guardianship. After Isaac Mason received the money upon returning from the court, he took the advice that had been given him and entered a train to depart from Muskogee, but was found thereon by some other person, a Mr. Swanson, who also claimed some contract for fees from Isaac Mason and Mason was induced to leave the train and did so shortly thereafter, went to or was found by Messrs. Brown & Stuart, two of the attorneys who had filed the petition for guardianship, and in the following morning Isaac Mason filed an application to have the order of dismissal set aside and the petition to have a guardian appointed for Stella Mason reinstated. After this complication had arisen, the respondents declined to pay Jefferson the $500.00 it had been

agreed upon he should receive regarding the settlement with Isaac Mason and the said sum has never been paid. In making the settlement with Isaac Mason and in obtaining the stipulation for dismissal and in having the petition for guardianship dismissed, the respondents knew that Messrs. Brown & Stuart and S. V. O'Hare were Isaac Mason's attorneys, but did not consult with them or advise them of the proceedings or have them present in court when the dismissal occurred. The petition to reinstate the petition for guardianship was heard in the county court of Muskogee county, Oklahoma by a special judge agreed upon by the parties and a guardian was appointed for Stella; an appeal was taken to the district court of Muskogee county, Oklahoma, a judge was brought in from another district and the action of the county court in appointing a guardian was sustained in the district court. The case then found its way into the Supreme Court of the state, wherein the same was pending at the time of this hearing, but was later dismissed.

"4. Your referee is of the opinion from the evidence and all the surrounding circumstances and facts disclosed in this case that at the time of making the contract of employment with the respondents herein the said Stella Mason, nee Manuel, was an ignorant, inexperienced negro girl who, although she had had some schooling, was wholly incompetent and incapable of handling her affairs or of making the contract that she made and entered into with the respondents, and that she was incompetent and incapable of protecting herself or of making a wise and just contract or one that would protect her interests, and that this finding is amply supported by reference to the very contract she made and the way she handled her estate during the brief time a part of it was subject to her control.

"5. Your referee finds that at the time of the making of the contract between Stella Mason and the respondents, her estate was not in litigation and was in no wise encumbered and was free and clear; was producing an income and she was receiving rents and interest on her invested capital and was so situated as to have about as little use for attorneys as it is possible to conceive of. It is true that a suit for divorce was pending between her and her husband, but this fact would furnish little, if any, necessity for the contract made.

"6. Your referee is of the opinion and finds that in view of all the circumstances surrounding the making of this contract, terms, the inexperience and incompetency of Stella Mason upon the one hand, the experience and legal knowledge of the respondents upon the other, together with the situation and surroundings under which the parties acted with regard to this contract, and the way it was obtained, it was unethical and unconscionable. I am not unmindful of the expert testimony as to reasonable fees found in the record, but in my judgment, such esti-

mates were hypothetical questions in which many of the important elements involved here were not taken into account.

"7. Your referee finds that at the time of the making of this contract, the respondents herein were each of them duly and legally licensed attorneys at law, practicing in the Supreme Court and other courts of this state. That they were each engaged in the practice of law in the city of Muskogee, Oklahoma, but that they were not partners nor occupying the same offices nor officing in the same building. That the respondent Vernor is a brother of the then county judge of Muskogee county, Oklahoma, but your referee finds that there is not sufficient evidence to sustain the charge that his relationship to the county judge was used to influence this employment. The fact itself was, of course, known to all these parties and it may have been, and probably was, a factor in inducing them to go to respondent Vernor, but there is no evidence, or, at least, not enough to justify a finding that either of the respondents herein used the fact for the purpose of obtaining the employment.

"8. Your referee finds that respondent Vernor knew nothing about these people and never talked to anyone about being employed in the matter until after Stella Mason came back to Oklahoma from Washington, D. C., and within two or three days at the furthest from the time she entered into the contract of employment with him. But, as to respondent Brook, it appears in Sango's testimony that he told Mr. Brook before he went to Washington, D. C., after Stella in an effort to get her to employ him, Sango, that if he got the employment, he might want respondent Brook to assist him, but there is no evidence to justify a finding that Brook had anything to do with Sango's going or encouraging him in the matter, or, in fact, made any reply to him.

"9. Your referee finds that after Stella Mason made the contract of employment with respondents herein that A. G. W. Sango, the colored attorney who had brought her back with him from Washington, D. C., made the claim to respondents that he was entitled to a portion of the proceeds derived from the contract and that this contention was settled by respondents paying to Sango $1,000.00 in full settlement of his claim. The evidence does not disclose whether there was any working agreement between Sango and the respondents; that Sango was actively engaged in trying to get himself employed, however, seems certain.

"10. Your referee finds that both of the respondents herein are comparatively young men in age and in the practice; that they are intelligent and educated and that up to the time of the investigation, out of which this petition for disbarment grew, their reputation as men and as attorneys at law in the community at Muskogee, Oklahoma, and where they were known, was good."

"Conclusions of Law.

"Your referee concludes that the conduct of the respondents herein, in making the contract they did with Stella Mason, under the circumstances, surroundings and in the manner in which it was made and considering its subject-matter and the unequal situation between the parties making the same, was unethical and unprofessional, and that in so doing, said respondents, and both of them, were unmindful of their duties as attorneys at law and did not observe the same, and that in so doing, their conduct was calculated to bring the profession of law into disrepute. Your referee also concludes that the respondents herein were unethical and unprofessional toward the attorneys for Isaac Mason in obtaining the dismissal of the guardianship he had filed, and with full knowledge of who his attorneys were and that they lived in the same town and without advising them of the situation and in taking the orders of dismissal in their absence and without their knowledge. And also in their dealings with and payments to A. G. W. Sango, who confessedly rendered no services as an attorney to their respondents' client."

To this report of the referee exceptions were filed by the respondents. As was said by this court, in Re Reily, 75 Okla. 192:

"The referee in a disbarment proceeding is an officer of the court, and the court has full authority to supervise and control his report by setting it aside or confirming or modifying it, as the facts and the law require." 23 R. C. L. 300; Knapp v. Aderholt, 42 Ky. 247, 21 S. W. 1063.

The rule to be applied in considering the report was stated in Town of Grove v. Haskell, 31 Okla. 77, 116 Pac. 805, as follows:

"The report of the referee appointed to take the evidence and report the same to this court with his findings of fact and conclusions of law, would not be conclusive on either. It should and would be accorded every reasonable presumption of being correct, with the burden on the party attacking it, but to be freely set aside by the court if found to be incorrect."

As was further said in Re Reily:

"The serious consequences of disbarment should follow only where there is a clear preponderance of evidence against the respondent. In such proceedings the attorney sought to be disbarred is presumed to be innocent of the charges preferred and to have performed his duty as an officer of the court in accordance with his oath, and the evidence in support of the charges must satisfy the court to a reasonable certainty that the charges are true and warrant a judgment of disbarment." In re Sitton, 72 Oklahoma, 177 Pac. 555; In re L. C. McNabb, 76 Okla. 253.

Following the findings of the Honorable Referee, he recommends as follows:

"Taking into account all of the surrounding circumstances, your referee is of the opinion that the respondents herein should be punished, but is inclined to believe that a definite suspension of the right to practice their profession for a definite period of time, to be fixed by the court, would be sufficient, and so recommends."

From an examination of the evidence, we find that the findings of fact by the referee are amply supported by the evidence, and not only so, but in modification thereof, we find that the conduct of the respondents in the management of the business of their client, after obtaining the contract of employment, was a direct violation of both the letter and spirit of sub-section 3 of section 252, Rev. Laws 1910, which provides that one of the sufficient causes for revoking or suspending the license of an attorney or counselor at law is, "For the willful violation of any of the duties of an attorney or counselor."

The acts and motives which should move an attorney in his relations with his client, and the conduct which should control in that regard, are laid down in 2 R. C. L. 187, as follows:

"For an attorney to act toward a client otherwise than with the utmost good faith is unprofessional, and therefore any advice given by the attorney which he does not believe to be correct, and any action whatever taken by him with a view of injuriously affecting his client, or of obtaining some advantage for the attorney to the prejudice of his client justifies a disbarment. The relation of attorney and client is of a confidential nature, and therefore any contract between them during the continuance of that relation is closely scrutinized to the end that the attorney may not gain any advantage either from his superior knowledge, or from the confidence reposed in him, and there have been instances in which, because of his entering into contracts with his client of a highly advantageous character to himself, he has been deemed to have acted from unconscionable motives and to be unfit to be continued in the profession."

This is a rule laid down by all the authorities and upheld by all the text-writers. One of the decisions, which probably is more often quoted on this question than any other, is the case of Fairfield County Bar Association v. Taylor (Conn.) 22 Atl. 441, wherein the court says:

"It is not enough for an attorney that he be honest. He must be that and more. He must be believed to be honest. It is absolutely essential to the usefulness of an at-

torney that he be entitled to the confidence of the community wherein he practices. If he so conducts himself in his profession that he does not deserve that confidence, he is no longer an aid to the courts, nor a safe guide to his clients. A lawyer needs to be learned. It would be well, if he could be learned in all the learnings of the schools. There is nothing to which the wit of man has turned that may not become the subject of his inquiries. Then, of course, he must be especially skilled in the books and rules of his profession. And he must have prudence and tact to use his learning, and foresight and industry and courage. But all these may exist in a moderate degree and yet he may be a creditable and useful member of the profession so long as the practice, to him, is a clean and honest function. But possessing all these great faculties, if once the practice becomes to him a mere 'brawl for hire' or a system of legalized plunder, where craft and not conscience is the rule and where falsehood and not truth is the means by which to gain his ends, then he has forfeited all right to be an officer of any court of justice, or to be numbered among the members of an honorable profession."

The exceptions to the findings and conclusions of the referee are overruled.

The findings and conclusions of the referee are accordingly confirmed, and it is ordered that the respondents and each of them be suspended from practicing as attorney or counselor at law in any of the courts in this state for a period of six months.

RAINEY, V. C. J., and KANE, McNEILL, and BAILEY, JJ., concur.