## In re HICKS.

No. 23353. Opinion Filed April 4, 1933.

Guy H. Sigler, for petitioner, H. A. Hicks.

A. W. Trice, J. R. Keaton, and R. H. Brown, as Legal Advisory Committee of the State Bar of Oklahoma, for the State Bar of Oklahoma.

CULLISON, J. The respondent, H. A. Hicks, stands charged with conduct unbecoming a lawyer, and the Board of Governors recommended his disbarment.

The record in this case discloses that respondent has been married and has six children. That at the time of the acts complained of herein he was divorced. That respondent became intimate with one Minnie Taylor, a dwarf, who was an unmarried female, of some 28 years of age, weighing about 60 pounds, and possessing the intellect of a child. That by reason of respondent's intimacy with the said Minnie Taylor, she became pregnant.

The question for our determination in

this cause is whether or not the acts and conduct of Hicks were such as to justify his disbarment. In our consideration of this question, it will be necessary to determine whether or not the acts and conduct of Hicks was such as to bring it within any act of the Legislature or any rule in force pertaining to members of the bar.

Chapter 264 of the 1929 Session Laws, entitled the State Bar Act, prescribes certain rules and regulations whereby the legal profession of this state controls the conduct of its members through a Board of Governors elected by the members of the bar.

Section 25 of said act [O. S. 1931, Sec. 4234] is entitled "Rules of Professional Conduct," and provides, in substance, that the Board of Governors, with the approval of the Supreme Court, shall formulate and enforce rules of professional conduct for the members of the bar in this state, and shall by rule prescribe the cause for suspension of license to practice or disbarment of attorneys.

Section 26 of said Act [O. S. 1931, Sec. 4235] prescribes the powers to disbar or suspend members by the Board of Governors. In compliance with the authority given under section 25, supra, certain rules and regulations prescribing the causes of disbarment, suspension, or other disciplinary actions, were formulated by the Board of Governors and approved by the Supreme Court. Therein the Board of Governors and the Supreme Court provided the necessary rules, setting out the various causes for which disbarment or suspension would be granted. In said causes for disbarment we find the following pertinent rules:

"(1) That he has ceased to possess that good moral character prerequisite to admission to the practice of the law.

"(2) That he is guilty of the commission of an act, though disassociated from his duties to the court, or to his clients, which renders him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law, even though the commission of such act be not punishable as a crime."

We have just enumerated briefly the facts pertaining to the cause of disbarment. Respondent contends that the rules enumerated above are not applicable to the conduct of an attorney after he has been admitted to the bar; that the rules cited are only applicable to his moral conduct prior to his admission to the bar. We interpret the contention of respondent to mean that it is necessary for an applicant for admission to the bar to possess a good moral character prior to his admission, but after his admission, his moral character no longer becomes a question of public importance and is of no concern to the members of the State Bar or to the legal profession.

Suffice to say the members of this court are in disagreement with the argument and contention of respondent. We interpret Rule (2) above mentioned to mean that, if an attorney at the bar is guilty of immoral conduct, although not connected with his duties or obligations to the court or his clients, so as to render him unfit to be entrusted by the court or his clients, he may be disbarred.

Webster defines immorality as a state or quality of being immoral; vice; wickedness; specif., unchastity; also, an immoral act or practice; a vice. "Immoral," as defined in the Standard Dictionary, is hostile to welfare of the general public; and Bouvier defines "immorality" to be that which is contra bonos mores. In Moore v. Strickling (W. Va.) 33 S. E. 274, it was held, in substance, that that conduct which is willful, flagrant, or shameless, and which shows a moral indifference to the opinions of the good and respectable members of the community is immoral conduct.

We cannot understand how an attorney at the bar can be in an immoral state of mind, and continue in the practice of immorality and wickedness, and still render efficient and just service to any one calling upon him for his services. Men who are guilty of debased, wicked, and immoral conduct do not have the same idea of righteous conduct that moral men possess.

We think the rules adopted by the State Bar and approved by this court, when properly interpreted, mean that an applicant for admission to the bar must possess a good moral character before admission and that his good moral character should continue after his admission. Under the rule it is required that the conduct of each member of the bar be maintained on that same high plane and standard necessary for each applicant of the bar to maintain before being admitted as a member of the bar.

We consider the rules adopted to be good and wholesome, and that a careful and painstaking compliance with the spirit of said

rules redound to the interest of an attorney at the bar and to the public in general.

The immoral conduct of the respondent alleged in the complaint filed by the State Bar is not denied by respondent or any one. The Board of Governors heard his case, and, after giving due consideration to the same, adjudged respondent guilty of conduct unbecoming to an attorney, and recommended disbarment. Respondent appeals from the judgment of the State Bar to this court. This court granted oral argument to the respondent, and he was represented by an attorney of his own choosing.

After carefully considering the record and authorities in this case, and the interest of the public therein, we are of the opinion that the findings of the Board of Governors are amply sustained by the record, and that the same should be, and are, by this court affirmed.

RILEY, C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. BUSBY, J., absent.