**WARKENTIN v. KLEINWACHTER.**

No. 23388.    Nov. 21, 1933.

J. R. Keaton, A. W. Trice, and R. H. Brown, for Board of Governors.

W. L. Kleinwachter, per se.

ANDREWS, J. The State Bar of Oklahoma has recommended to this court that the respondent herein be suspended from the practice of law for a period of one year. The question presented for determination by this court is whether or not that recommendation be approved by this court and an order made in conformity therewith.

A statement of the case is included in the brief of the respondent, as follows:

"On March 1, 1930, the respondent, W. L. Kleinwachter, and his wife were in Oklahoma City, Okla., transacting business and shopping, and about 7 p. m., Earl Evans, a nephew of Mrs. Kleinwachter, phoned from Yukon, Okla., and requested that the respondent come to Yukon, Okla., and meet him near the post-office building; that his auto was attached. The respondent proceeded to Yukon, Okla., and Earl Evans advised him that he owed a grocery bill to the complainant and that the complainant had attached his auto, and that there was a mortgage upon the auto in the sum of $200 as the certificate of title to the auto disclosed. The respondent and Earl Evans then had an interview with the complainant in his grocery store and he advised that the amount due him by Earl Evans was $54 and furthermore that the mortgage upon the auto was not recorded in Canadian county. The respondent and Earl Evans then went outside the store building and discussed the accuracy of the grocery bill, the probability of the mortgage upon the auto being unrecorded in Canadian county, etc. Then Earl Evans asked for a loan of $54 from the respondent until his arrival at Holdenville, Okla., which was to be the following day, March 2, 1930. Evans informed the respondent that he had a check for $38 which covered his salary at the Yukon, Okla., post office, and which had been taken to Holdenville, Okla., by his mother on the morning of March 1, 1930; that he had about $10 in cash and that he would earn $6 that night playing in the orchestra for a dance at Yukon, Okla. Deciding to make the loan, the respondent and Earl Evans returned to the grocery store to obtain a blank check and the respondent uttered a check payable to Earl Evans, amount $54, and thereupon handed it to him. Earl Evans tendered the check to the complainant and upon examination he ascertained that the respondent was the maker of the check, whereupon he made inquiry of the respondent if he could have himself identified. The respondent produced some letters from his pocket which contained his name and address. The complainant then asked the respondent if he knew anyone in Yukon, Okla., who could identify him and he was informed that he knew Mr. McKinney, the postmaster, with whom he had become acquainted a few days previous. Mr. McKinney was called by phone to the grocery store and identified the respondent as the man he had met a few days previous. The complainant investigated further and inquired of the respondent if he knew anyone in Holdenville, Okla., and he was advised that he knew practically everyone; he then inquired if the respondent knew anyone connected with the bank there and he was advised that he knew Dean Mathis, the cashier, and W. M. Taylor, the president. The complainant then engaged the president of the bank, W. M. Taylor, in a conversation over the phone and the respondent was called to the phone to speak to Mr. Taylor to ascertain if Mr. Taylor could recognize his voice, which he did. After Mr. Taylor recognized the respondent's voice over the phone, the complainant accepted the check from Evans and released the auto to him. After the auto was released the respondent proceeded to Oklahoma City for the night. Some time after the dance at Yukon, Okla., that night, Earl Evans departed for Holdenville, Okla., and the following day the respondent returned to Holdenville, Okla., and requested of Earl Evans payment of the loan. Earl Evans informed the respondent that he could not repay him the money he had borrowed; that he had had some expense with his auto en route from Yukon to Holdenville, Okla., and that his parents had cashed the check to pay drayage, whereupon the respondent stopped payment of the check immediately. Earl Evans was without a job upon his arrival at Holdenville, Okla., but he would occasionally play in an orchestra for dances, and prior to December, 1931, he remitted to the complainant on his grocery bill, $2 at one time and $1 on another occasion. The respondent refused to pay Earl Evans' grocery debt; however, he informed the Board of Governors of the State Bar of Oklahoma that he had no objection to giving assistance to the complainant in collecting his grocery bill from Earl Evans, especially after Earl Evans had made application for employment at manual labor and the respondent would handle the funds paid him as wages. Whereupon, the respondent collected and transmitted to the complainant a total of $51, which, together with the $3 previously remitted to the complainant by Earl Evans, made a total of $54 which was paid to the complainant, and which was the amount of the Earl Evans' grocery debt."

With reference thereto the Board of Governors of the State Bar said:

"The statement of facts contained in respondent's brief, pages 1 to 4, inclusive, is substantially correct as far as it goes, but we do not think it contains all the pertinent facts disclosed by the evidence at the hearing before administrative committee for section No. 13. Fòr instance, the testimony of complainant, Warkentin, clearly shows that he not only refused to discharge the attachment and surrender the possession of the car to Earl Evans until Evans' indebtedness to him had been paid, but that he (Warkentin) fully relied upon the check of respondent for payment of said account. * * *

"The last paragraph of the statement of facts made by respondent is to the effect that Earl Evans had fully paid the account of complainant; but an examination of the last page of respondent's brief shows that the aggregate of $51 of the $54 account was paid by respondent in installments beginning December 31, 1931, and ending February 7, 1932, all having been made after the recommendation of suspension by the Board of Governors on December 19, 1931. * * * The facts in this case are practically undisputed and we think fully support the recommendation made by the Board of Governors of the State Bar of Oklahoma that respondent be suspended from the practice of law for the period of one year."

In view of those statements we do not consider it necessary to make a further statement as to the facts shown by the record in this case.

From those facts it is evident that there is but one question presented to this court, which is a question of law. In order to determine that question it is deemed advisable to set out herein the law pertaining to disciplining of attorneys at law.

By the provisions of section 4199, O. S. 1931, the Legislature has provided what persons shall be disqualified to practice law. The provisions of that section are as follows:

"No person shall practice as an attorney and counselor at law in any court of this state who is not a citizen of the United States, or who holds a commission as judge of any court of record, or who is a sheriff, coroner, or deputy sheriff; nor shall the Clerk of the Supreme Court, or the clerk of the district court, or probate court, or the deputy of either, practice in the particular court of which he is clerk or deputy clerk; but nothing herein contained shall prevent any judge of any of the courts of this state from finishing any business by him undertaken in the district, circuit, or Supreme Court of the United States, prior to his election or appointment as judge; and an alien who has declared his intention to become a citizen of the United States may practice as if he were a citizen."

By the provisions of section 4234, O. S. 1931, the Legislature has provided:

"With the approval of the Supreme Court, the Board of Governors shall formulate and enforce rules of professional conduct for all members of the Bar in the state; and shall, by rule, prescribe the causes for suspension of license to practice, for disbarment and for such other disciplinary measures as it may deem proper; provided, that until otherwise fixed and determined by the Board of Governors, the causes for suspension and disbarment and the imposition of disciplinary measures, and the procedure in respect thereto shall be as now prescribed by the statutes of this state and the rules of the Supreme Court."

Pursuant to that provision the Board of Governors has formulated and this court has given its approval to twelve "Causes for Disbarment, Suspension or Other Disciplinary Actions."

The fifth, sixth, seventh, ninth, tenth and eleventh of those causes are as follows:

"5. That he has represented to any person either by writing or word or deed, or otherwise, that he or any other attorney has political or personal influence with any court, or judge thereof, commission or tribunal exercising judicial or quasi judicial powers or charged by law with the performance of any duties requiring the exercise of discretion, or with the Attorney General or any of his assistants or with the county attorney of any county; provided this shall not apply to complaints made to proper authorities.

"6. That he has been convicted in any court of record of the United States, or of any state or territory of the United States, or of the District of Columbia, of a felony or a misdemeanor involving moral turpitude.

"7. That he is guilty of a willful disobedience or violation of any order of the court requiring him to do or forbear any act connected with or in the line of his profession.

"9. That he has divided or agreed to divide fees for legal services with anyone other than another attorney entitled to practice law, and if the fee is earned or received in a cause pending in court then only with an attorney of record therein. Provided that this provision shall not apply to the sharing of commissions at a commonly accepted rate, upon collections of commercial claims between forwarder and receiver. though one be a lawyer and the other not.

"10. That he has employed, paid or

agreed to pay any person to solicit legal business."

The record in this case shows nothing to indicate the applicability of any of those causes.

The eighth cause for disbarment is as follows:

"8. That he has been guilty of a willful violation of any of the duties of an attorney or counselor."

The duties of an attorney and counselor have been defined by the Legislature by the provisions of section 4201, O. S. 1931, as follows:

"It is the duty of an attorney and counselor:

"First. To maintain, while in the presence of the courts of justice, or in the presence of judicial officers engaged in the discharge of judicial duties, the respect due to the said courts and judicial officers, and at all times to obey all lawful orders and writs of the court.

"Second. To counsel and maintain no actions, proceedings or defenses, except those which appear to him legal and just, except the defense of a person charged with a public offense.

"Third. To employ for the purpose of maintaining the causes confided to him such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statements of facts or law.

"Fourth. To maintain inviolate the confidence, and, at any peril to himself, to preserve the secrets of his client.

"Fifth. To abstain from all offensive personalities, and to advance no fact prejudicial to the honor or reputation of a party or witness unless required by the justice of the cause with which he is charged.

"Sixth. Not to encourage either the commencement or continuance of an action or proceeding from motives of passion or interest.

"Seventh. Never to reject for any consideration personal to himself the cause of the defenseless or the oppressed."

When the eighth cause is considered in connection with the provisions of section 4201, supra, and the record is examined under the rules stated, it is apparent that under the facts shown by the record the eighth cause is not applicable.

The fourth cause for disbarment is as follows:

"4. That he has been guilty of the violation of the oath taken by him upon his admission to the Bar."

The oath of an attorney prescribed by the Legislature in section 4200, O. S. 1931, is as follows:

"Upon being permitted to practice as attorneys and counselors at law, they shall, in open court, take the following oath: You do solemnly swear that you will support, protect and defend the Constitution of the United States, and the Constitution of the state of Oklahoma; that you will do no falsehood or consent that any be done in court, and if you know of any you will give knowledge thereof to the judges of the court, or some one of them, that it may be reformed; you will not wittingly, willingly or knowingly promote, sue, or procure to be sued, any false or unlawful suit, or give aid or consent to the same; you will delay no man for lucre or malice, but will act in the office of attorney in this court according to your best learning and discretion, with all good fidelity as well to the court as to your client, so help you God."

The record shows no fact making the fourth cause applicable.

The third cause for disbarment is as follows:

"That his course of conduct, though disassociated from his duties to the court or to his clients, is such as to render him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, responsibilities and duties of an attorney and counselor at law."

The record does not show a "course of conduct." It is limited to one particular transaction, and "course of conduct" cannot be shown by one particular transaction. For that reason we must hold that there is nothing in the record to make the third cause applicable.

The first cause for disbarment is as follows:

"1. That he has ceased to possess that good moral character prerequisite to admission to the practice of the law."

The words "morality" and "character" may have the same meaning when standing alone, but when used together, the word "moral" defines the kind of character required by the rule. When so used the word "moral" is in contradistinction to the word "immoral." With reference to the word as used in the rule, this court, in Re Hicks, 163 Okla. 29, 20 P. (2d) 896, said:

"Webster defines immorality as a state or quality of being immoral; vice; wickedness; specif., unchastity; also, an immoral act or practice; a vice. 'Immoral,' as defined in the Standard Dictionary, is hostile to welfare of the general public; and Bouvier defines 'immorality' to be that which

is contra bonos mores. In Moore v. Strickling, 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279, it was held, in substance, that that conduct which is willful, flagrant, or shameless, and which shows a moral indifference to the opinions of the good and respectable members of the community, is immoral conduct."

We can find nothing in the record to indicate any immoral conduct as so defined. For that reason we must hold that the record shows no violation of the first cause.

The second cause for disbarment is as follows:

"2. That he is guilty of the commission of an act, though disassociated from his duties to the court or to his clients, which renders him an unfit, unsafe and untrustworthy person to be entrusted with the powers, duties and responsibilities of an attorney and counselor at law, even though the commission of such act be not punishable as a crime."

The State Bar relies upon this cause as a basis for its recommendation. The act therein referred to is one "which renders him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law." In Re Reily, 75 Okla. 192, 183 P. 728, this court said:

"The law does not demand that every technical infraction of the law by an attorney shall require his disbarment, although an attorney should endeavor to observe literally the law; but it is those infractions of duty by an attorney that involve moral turpitude and evince a depraved character, rendering such attorney untrustworthy and a reflection upon the bar and the court, as an officer thereof, that demand his disbarment."

The record shows nothing involving moral turpitude or evidencing a depraved character rendering the respondent untrustworthy and a reflection upon the bar and the court as an officer thereof.

The twelfth cause for disbarment is as follows:

"12. Nothing contained in the foregoing rules shall limit the right of the Supreme Court to disbar, suspend or discipline any attorney for cause or for contempt of court."

By that rule this court attempted to and did reserve to itself the right to discipline any attorney for any cause deemed to be sufficient by this court, even though no specific cause therefor had been stated in the causes for disbarment. That provision was made for the reason that this court felt that the eleven preceding causes for disciplinary measures might not be sufficient to include all of the offenses which an attorney might commit, and in order that this court might safeguard itself from a chance that the enumerated causes for disbarment did not cover some specific act. We find nothing in the record in this case that warrants the disciplining of the respondent under the provisions of the twelfth cause.

An examination of all the decisions of this court pertaining to the disciplining of attorneys discloses that they relate to the conduct of attorneys toward the courts, whether within or without the presence of a court. State Bar Commission ex rel. Williams v. Sullivan, 35 Okla. 745, 131 P. 703; In re Disbarment of Dill, 107 Okla. 61, 229 P. 801; In re Disbarment of Schulte, 114 Okla. 115, 243 P. 933; State ex rel. Attorney General v. Breckenridge, 126 Okla. 86, 258 P. 744; and State ex rel. Attorney General v. Ledbetter, 127 Okla. 85, 260 P. 454; the duty of attorneys as to the funds of their clients, In re Warren, 49 Okla. 87, 151 P. 619; State v. Bresline, 67 Okla. 125, 169 P. 897; In re Sitton, 72 Okla. 13, 177 P. 555; State ex rel. Goode v. Cutlip, 83 Okla. 183, 202 P. 782; In re Disbarment of Burns, 90 Okla. 1, 215 P. 193; In re Sides, 158 Okla. 110, 12 P. (2d) 232; the duty of attorneys as to litigation for their clients, State ex rel. Dale v. Jefferson, 79 Okla. 288, 193 P. 44; State ex rel. Dale v. Vernor, 79 Okla. 124, 191 P. 729; In re Biggers, 24 Okla. 842, 104 P. 1083; In re Simpson, 79 Okla. 305, 192 P. 1097; In re Tillman, 157 Okla. 166, 11 P. (2d) 511; the conviction of attorneys of misdemeanors involving moral turpitude, In re Williams, 64 Okla. 316, 167 P. 1149; the conviction of attorneys of felonies, In re Horine, 64 Okla. 315, 167 P. 1148; In re Disbarment of Elliott, 122 Okla. 180, 253 P. 103; In re Eyler, 136 Okla. 268, 277 P. 930; In re Roach, 141 Okla. 78, 284 P. 33; fraudulent admission to the practice of law, Dean v. Stone, 2 Okla. 13, 35 P. 578; In re Mosher, 24 Okla. 61, 102 P. 705, and the moral conduct of attorneys, In re Hicks, supra.

A careful examination of all of those decisions discloses no decision involving one particular transaction of an attorney in a business dealing disassociated from his duties as an attorney to the court or to his client, save only In re Hicks, supra, wherein the record showed immoral conduct which was within the provisions of the first cause for disciplinary action. See, also, In re Reily, supra; State ex rel. Dale v. Vernor, supra; State ex rel. Goode v. Cutlip, supra.

We call attention to the decision of this court in Re Champion, 24 Okla. 154, 103 P. 600, wherein this court refused to discipline an attorney who had made a false affidavit for the continuance of a cause, for the reason that it found that he acted therein in good faith and in the belief that the facts stated in the affidavit were true. The decision is important in that it established the rule that good faith of an attorney is a defense in a disciplinary proceeding, even though the action of the attorney was not supported by the facts. Certainly this court does not intend that an attorney should be disciplined for a single error of judgment or a course of conduct which did not violate his oath of office, or evidence moral turpitude, a depraved character, disrespect for the court, or disregard of the duties to a client, and which did not result in a conviction either for a misdemeanor involving moral turpitude or for a felony. To hold that an attorney might be disciplined for an error of judgment other than in the cases mentioned would be to hold contrary to any holding of this court and contrary to the holding of any court to which our attention has been called.

The State Bar relies on the decision of the Supreme Court of Oregon in State ex rel. Joseph v. Mannix, 288 P. 507. That decision is neither controlling nor persuasive as to the issue presented by the record in this case for the reason that the record in that case showed a course of conduct and not a single act. Therein the court said:

"The evidence before us shows a long continued course of misrepresentations which the defendant willfully made to the courts of this state and to those of the federal government. He did not confine himself to a single wrongful act, but repeated his deceit in new litigation and before different courts. His misrepresentations were in regard to material facts, and, as is evident from preceding quotations, were effective in some instances. He never retracted, apologized, or explained. His wrongful course of conduct has been at the expense of a charity; indeed, the charity has been in continuous litigation for almost a decade, and those whom Mr. Wemme intended should be the recipients of his bounty have not yet been reached."

It is not contended herein that any course of conduct was shown by the record in this case or that the third cause for suspension is applicable. So, also, as to the decision of that court in State v. Winton (Ore.) 5 P. 337, relied on by the State Bar. Therein the court said:

"The case before us is not one committed outside of the professional relation and in the private capacity of the defendant. * * *"

While this court is committed to the idea that a lawyer may be disciplined for acts disassociated from his duties to the court or to his client, and to the idea that a lawyer may be disciplined for an act the commission of which is not punishable as a crime, it has qualified those rules and has limited their application to those acts "which render him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law." The rule which meets with our approval was stated by the Supreme Court of New Mexico in Re Renehan, 145 P. 111, as follows:

"In a proceeding looking to disbarment, where the evidence fails to show that the relation of attorney and client existed, an attorney at law in his dealings with a party in a business transaction is under no greater obligation to the party with whom he deals than a person not an attorney would be."

That rule will be applied by this court, unless the action of the attorney shows that he has ceased to possess that good moral character prerequisite to admission to the practice of law, that he is an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law, that the act, together with other acts, shows a course of conduct which renders him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law, or that thereby he has violated other rules for disciplinary action adopted by this court.

The facts shown by the record in this case show that the respondent thought that he had the right to stop the payment of a check that he had issued. The record shows that that check was not what is commonly called a "hot check." There is nothing in the record to show that he had ever issued such a check. There is nothing in the record to show that he had engaged in the practice of stopping the payment of checks or that he had stopped the payment of any other check. That it is no part of the duty of an attorney to furnish a client with funds with which to discharge attached property must have been known to the complainant in this case. The record shows that the complainant must have known that the respondent at the time he issued the check was merely advancing money to a

client, if, in fact, Evans was at that time a client of the respondent.

In our opinion, the question goes to the very base of the State Bar Act. The State Bar has important functions to perform. One of them is to assist this court in ascertaining the facts necessary to purge the bar of this state of those who now enjoy the privilege of practicing law who are unfit, unsafe, and untrustworthy persons to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law. If it is to be used, as the evidence in this case shows that it was attempted to be used, that is, as an agency for the collection of claims against attorneys arising out of transactions disassociated from their duties to the courts and to their clients, in our opinion, its life can be at best but a short one. If the recommendation of the State Bar in this instance is approved, it means that a lawyer cannot engage in a business transaction without endangering his standing as a lawyer if he errs in his judgment as to his rights.

We repeat our holding in Re Sitton, supra, as follows:

"The lawyer's life must be one of fidelity and stern integrity. There is no place at the bar for the unscrupulous, and the cheeks of the lawyer, who besmirches his profession, should be made to burn with shame. * .* *"

We do not approve of the actions of the respondent. Having given his check and thereby, either directly or indirectly, having obtained a discharge of the attached property it was both his moral and his legal duty to honor the check. This he did not do. We cannot say from this record that his error in judgment makes him an unfit, unsafe, and untrustworthy person to be entrusted with the powers, duties, and responsibilities of an attorney and counselor at law.

For the reasons stated the recommendation of the State Bar is disapproved. In doing so we do not wish to convey the information to the State Bar that it ought not to refuse to consider charges of misconduct which are made against an attorney merely because his act or conduct was disassociated from his duties to the courts or to his client. We wish to be understood as holding that before this court will discipline an attorney for a single act or a course of conduct disassociated from the duties of the attorney to the courts or to his client, we must find from the evidence that the single act or the course of conduct is such as to render the attorney an unfit, unsafe, and untrustworthy person to be entrusted with the

powers, duties, and responsibilities of an attorney and counselor at law. That an attorney stopped the payment of a check which he had given to a client in order that his client might obtain a discharge of attached property, standing alone, is not sufficient to establish a course of conduct and does not establish the basis for disciplinary measures.

The complaint is dismissed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. McNEILL, J., dissents.

---

McNEILL, J. (dissenting). I am not satisfied with the conclusion reached in this case by the majority opinion. It appears to me that the misconduct of respondent in the instant action was gross and unbecoming an attorney at law, and sullies professional honor. In my opinion, this is not a case of an attorney conducting a transaction at arm's length with a third person. I am impressed with the fact that respondent at least invited a presumption that he was employed by his nephew, and that he took advantage of his professional position to deceive complainant by uttering his check payable to his nephew for the amount of indebtedness which his nephew owed to complainant in an effort to secure a release of the automobile which complainant had attached in a proceeding before a justice of the peace for the purpose of liquidating the indebtedness said nephew owed to complainant.

Attorneys in the conduct of their profession are sworn and bound to uphold the laws whether these are administered by the justice of the peace or the highest courts of our land.

In the case of Ex parte Wall, 107 U. S. 265, Mr. Justice Bradley, speaking for the Supreme Court of the United States, said:

"Of all classes and professions, the lawyer is most sacredly bound to uphold the laws. He is their sworn servant; and for him, of all men in the world, to repudiate and override the laws, to trample them under foot, and to ignore the very bands of society, argues recreancy to his position and office, and sets a pernicious example to the insubordinate and dangerous elements of the body politic. It manifests a want of fidelity to the system of lawful government which he has sworn to uphold and preserve."

Mr. Justice Field, in dissenting in that case, said:

"Attorneys and counsellors-at-law—and the

two characters are in this country generally united in the same person—are officers of the court, admitted to be such by its order upon evidence that they possess sufficient learning to advise as to the legal rights of parties, and to conduct proceedings in the courts for their prosecution or defense, and that they have such fair private characters as to insure fidelity to the interests intrusted to their care. The order of admission, as said in the Garland Case, is the judgment of the court that they possess the requisite qualifications of learning and character, and are entitled to appear as attorneys and counsellors and to conduct causes therein. Thenceforth they are responsible to the court for professional misconduct and entitled to hold their offices during good behavior. 4 Wall. 333. 387. * * *

"When the proceeding to disbar an attorney is taken for misconduct outside of his profession, the inquiry should be confined to such matters, not constituting indictable offenses, as may show him unfit to be a member of the bar; that is, as not possessing that integrity and trustworthiness which will insure fidelity to the interests intrusted to him professionally, and to the inspection of any record of conviction against him for a felony or a misdemeanor involving moral turpitude. It is not for every moral offense which may leave a stain upon character that courts can summon an attorney to account. Many persons, eminent at the bar, have been chargeable with moral delinquencies which were justly a cause of reproach to them; some have been frequenters of the gaming table, some have been dissolute in their habits, some have been indifferent to their pecuniary obligations, some have wasted estates in riotous living, some have been engaged in broils and quarrels disturbing the public peace; but for none of these things could the court interfere and summon the attorney to answer, and if his conduct should not be satisfactorily explained, proceed to disbar him. It is only for that moral delinquency which consists in a want of integrity and trustworthiness, and renders him an unsafe person to manage the legal business of others, that the courts can interfere and summon him before them. He is disbarred in such case for the protection both of the court and of the public. * * *

"To disbar an attorney is to inflict upon him a punishment of the severest character. He is admitted to the bar only after years of study. The profession may be to him the source of great emolument. If possessed of fair learning and ability, he may reasonably expect to receive from his practice an income of several thousand dollars a year,— equal to that derived from a capital of one or more hundred thousand dollars. To disbar him having such a practice is equivalent to depriving him of this capital. It would often entail poverty upon himself, and destitution upon his family. Surely the tremendous power of inflicting such a punishment should never be permitted to be exercised unless absolutely necessary to protect the court and the public from one shown by the clearest legal proof to be unfit to be a member of an honorable profession."

In the case of In re Wilson, 79 Kan. 450, 100 P. 75, the Supreme Court of Kansas said:

"It is said that the courts are not the curators of the morals of the bar, and it is probably true that the courts should not take cognizance of a solitary immoral act, not amounting to a crime and unconnected with his duties in court, of a member of the bar. It is, however, one of the requisites for admission to the practice that the candidate should present evidence to the court that he is a person of good moral character, and it would be a great stigma upon an honorable profession if the members of it were powerless to purge it of any who may have been improvidently received into its fold and whose after life is offensively corrupt, or whose business transactions, even outside of the courts, are characterized by dishonesty: in short, that the profession is compelled to harbor all persons of whatever character who have gained admission to it and are fortunate enough to keep out of jail or the penitentiary. This court, at least, is not prepared to say that persons of such character have a legal right to officiate as advocates of right in our courts which ought to be and generally are temples of justice. This ground of disbarment may not be included in any of the causes therefor specified by the statute, but the court has the inherent power to require of its officers, at least common honesty and decency."

In the case of In re Smith, 73 Kan. 743, 85 P. 584, on page 586, the Supreme Court of Kansas, said:

"It is generally held that the enumeration of the grounds for disbarment in the statute is not to be taken as a limitation on the general power of the court, but that attorneys may be removed for common-law causes as well when the exercise of the privileges and functions of their high office is inimical to the due administration of justice. Farlin v. Sook, 30 Kan. 401, 1 P. 123, 46 Am. Rep. 100; In re Norris, 60 Kan. 659, 57 P. 528; Boston Bar Association v. Greenhood, 168 Mass. 169, 46 N. E. 569; In re Matter of Mills. 1 Mich. 392; Laughlin's Case, 10 Mo. App. 1, 31 S. W. 889; State v. Harber, 129 Mo. 271, 31 S. W. 889; State v. Gebhardt, 87 Mo. App. 542; In re Boone (C. C.) 83 Fed. 944; 4 Cyc. 905, 906. The nature of the office, the trust relation which exists between attorney and client, as well as between court and attorney, and the statutory rule prescribing the qualifications of

attorneys, uniformly require that an attorney shall be a person of good moral character. If that qualification is a condition precedent to a license or privilege to enter upon the practice of the law, it would seem to be equally essential during the continuance of the practice and the exercise of the privilege. So it is held that an attorney will be removed not only for malpractice and dishonesty in his profession, but also for gross misconduct not connected with his professional duties, which show him to be unfit for the office and unworthy of the privileges which his license and the law confer upon him. Ex parte Wall, 107 U. S. 265, 2 Sup. Ct. 569, 27 L. Ed. 552; Ex parte Burr, Fed. Cas. No. 2186; 1 Wheeler, Cr. Cases 503; In re 0 ___, 73 Wis. 602, 42 N. W. 221; Delano's Case, 58 N. H. 5, 42 Am. Rep. 555; O'Connell, Petitioner, 174 Mass. 253, 53 N. E. 1001, 54 N. E. 558. * * *"

In the case of In re Kalisky, 169 App. Div. 531, 155 N. Y. S. 550, it is said in the syllabus:

"Respondent was attorney for the borrowers in connection with the procuring of a loan. At the closing of the transaction one of the lender's attorneys presented their bill and demanded payment, and refused respondent's offer to pay later, insisting upon immediate payment, in default of which the loan would be declared off. Respondent thereupon drew his check for the amount of the bill, but subsequently stopped payment and withdrew his balance from the bank to meet other demands, and failed to pay the check until judgment was recovered thereon. The facts indicated that it was not his intention to pay the check until the receipt of funds from one of his clients, and that by the concealment of this intention the lender's attorney was misled into accepting the check as full payment. Held, that respondent should be suspended from practice for one year, as it was clear that he did not give the check in good faith, but for the purpose of misleading the lender's attorney, and even though he intended to deliver the check as an immediate and unconditional obligation, his subsequent acts in stopping payment, using the money in the bank for other purposes, thus rendering himself unable to pay, and then delaying payment until compelled by legal proceedings, constituted official misconduct."

The Supreme Court, Appellate Division, First Department, in that case said:

"We have examined the evidence with care, and entirely concur with the referee, both in his findings as to the facts and in his deductions therefrom. We consider it perfectly clear that respondent did not give the check in good faith, but solely for the purpose of misleading the attorney for the bank. It is impossible to overlook conduct of this character. The honor of the profession requires that we should mark our disapproval by imposing adequate discipline.

"The respondent is suspended from practice for one year, with leave to apply at the expiration of that period for reinstatement, upon showing compliance with the conditions to be recited in the order to be entered hereon."

As 1 read this record, I conclude that respondent was guilty of unethical and professional misconduct. I am unable to put my stamp of approval upon the record in this case. He failed to honor the check, which unquestionably under the record, should have been honored. He stood before complainant as a member of the bar of this state, reppresenting his nephew by reason of his profession. This profession was known to complainant, when the respondent obtained a release of the automobile. Respondent knew that complainant relied upon the check which respondent had given, and that complainant had satisfied himself by long distance telephone inquiry that the check was good before complainant accepted said check and released said automobile from the attachment proceedings. It was not accepted by complainant upon the theory that respondent's nephew would repay respondent.

The office of an attorney should be a badge of respectability. In my opinion the transaction was not honest, and respondent practiced a deceit upon complainant such as to constitute professional misconduct. Such misconduct does not bespeak integrity and trustworthiness in the profession of law and for such want and disregard of integrity and trustworthiness this court, in my opinion should and ought to interfere and discipline said respondent for such gross misconduct which unquestionably casts a reflection on the profession of law. On the contrary, no discipline of any kind or character has been administered to respondent by this court.