STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

George Mitchell ABLAH, Respondent.

SCBD No. 1746.

Supreme Court of Oklahoma.

Dec. 22, 1959.

Harry Foreman, Norman, Delmar L. Stagner, Lee B. Thompson, Oklahoma City, for complainant.

Howard K. Berry, Oklahoma City, for respondent, Marian P. Opala, Oklahoma City, of counsel.

HALLEY, Justice.

The purpose of this proceeding is to review the report of the Executive Council of the Integrated Bar of Oklahoma, recommending that George Mitchell Ablah, an active member of the Oklahoma Bar, be suspended from the practice of law for a period of six months and be given a public reprimand on the one charge of the complaint of professional misconduct filed against him, investigated by the Grievance Committee for District No. 7–B, and the report and recommendation of the Grievance Committee having been approved in full by the Executive Council of the Oklahoma Bar Association December 31, 1958, and filed in this Court on January 12, 1959, by the Oklahoma Bar Association.

The complaint filed by the Oklahoma Bar Association against Respondent was filed May 26, 1958, with the Grievance Committee No. 7–B, and alleged that Respondent was duly licensed to practice law in the State of Oklahoma, and has actively engaged in such practice in Oklahoma City during the period referred to in the complaint.

It was alleged that from about December 20, 1957, to about March 1, 1958, Respondent entered into a course of conduct unbecoming an attorney and which tends to bring the legal profession into disrepute;

that during such time Respondent made from 5 to 65 anonymous, embarrassing, disturbing and annoying telephone calls per day to the office of a doctor of medicine, which calls had the effect of paralyzing telephone service for professional purposes to and from the office mentioned; that such calls in the presence of patients caused much embarrassment to the doctor and so interfered with his referral business as to almost destroy it; that such calls were generally either loud, clicking or whistling noises, hideous laughter or vile and obscene language; that as a result of the conduct of Respondent the doctor had to install additional telephone lines and a burglary alarm system; that the doctor was also forced to expend large sums of money in an attempt to discover the identity of the caller, and it was only after Respondent's identity was discovered that Respondent ceased the course of his conduct above mentioned.

That the acts, deeds and things above complained of constitute conduct unbecoming an attorney at law, a violation of Respondent's oath as an attorney at law and is in direct violation of the Canons of Ethics prescribed by the American Bar Association and adopted by the Supreme Court of the State of Oklahoma for the Oklahoma Bar Association, under the Rules Creating, Controlling and Regulating the Oklahoma Bar Association as obligatory upon all attorneys licensed to practice law in Oklahoma.

Complainant prayed that Respondent be required to appear and show cause why he should not be disbarred or suspended from the practice of law in Oklahoma, or otherwise disciplined and upon hearing that he be disbarred, suspended or otherwise disciplined.

Respondent filed a motion to dismiss and a demurrer and later a response in which he denied that he had been guilty of professional misconduct which would bring the legal profession into disrepute or justify the Bar in filing the complaint against him. He alleged that the principal relators of the complaint against him are his relatives, who for reasons not known to Respondent, have treated him with scorn and contempt; that their information to the Bar Association is false, grossly exaggerated and maliciously inclined to further embarrass and injure him; that he has violated no ordinance, law or Canon of Ethics; that no relationship of attorney and client ever existed between Respondent and the relators, and prayed that the complaint be dismissed.

On July 30, 1958, the matter came on for trial before the Grievance Committee and a hearing was had.

November 17, 1958, the Grievance Committee reported finding the Respondent guilty as charged in the single count of the complaint and recommended that Respondent be reprimanded and suspended for a period of six months. A narrative statement of the evidence was attached to the report. As stated above, the Central Committee adopted the recommendation of the Grievance Committee which is now before this Court for consideration.

We have carefully examined all of the oral testimony and documentary evidence introduced. From an examination of the cases cited, we are convinced that this is a most unusual case and very difficult to discuss clearly and fairly. No case is cited that involves the exact unprofessional conduct of the character involved here, and the acts of the Respondent had a most unusual effect upon those intended to be annoyed, vexed and seriously disturbed by fear of financial loss, but also loss of reputation and even physical attack by a maniac.

■ There is no question but that the conduct complained of has no bearing whatever upon the relation of attorney and client. Respondent was never the attorney for those complaining that his conduct toward them was so financially injurious to them and so disturbing in its nature as to render Respondent unworthy to be a member of the legal profession, and to justify disciplinary action by the officers of the Bar Association. It is well settled that an attorney may so conduct himself outside the relationship of attorney and client as to

warrant disciplinary action and even disbarment. Dishonesty in dealing with his fellow men, unjustified slander and unworthy annoyance are often sufficient to justify disciplinary action. State v. Nix, Okl., 295 P.2d 286; In re Hicks, 163 Okl. 29, 20 P.2d 896.

Another unusual feature of the present case is the fact that the complainants who originated these proceedings and the Respondent belong to the same race, and the Respondent, a native of Oklahoma, was related by blood to the doctor here concerned and his sister. The doctor and his sister are the principal ones Respondent is charged with annoying and toward whom his alleged misconduct was aimed.

The telephone calls in question were made from about December 20, 1957, to about March 1, 1958, to the doctor's office, whose sister, was serving as his receptionist and answered his office telephone calls.

The physician testified at length that the calls were so numerous that it hurt his business, almost paralyzed it; that about 60 to 70 calls came during one day; that the caller would often hang up when his call was answered, and call again quickly; that his sister was greatly upset and frightened; that he hired a detective to protect her; had an additional phone installed and later hired an expert to trace the calls to their source; that the calls consisted of vulgar and offensive language, heavy breathing and unbecoming sounds that caused the sister to believe that the caller was a sex maniac.

After the doctor had spent about $1,000 in trying to locate the source of the phone calls, they were traced to the office of Respondent, who admitted that he had made the calls. Respondent stated he thought he had been mistreated by the young lady here involved and other members of her family and he made the calls in a spirit of revenge. He further stated the doctor had said he should become a grocer and not try to be a lawyer and that the doctor's sister had said he was "odd" and would not succeed as a lawyer. These charges were denied by both the doctor and his sister.

The record discloses that the Grievance Committee heard tape recordings of certain calls made by the Respondent but such recordings are not in the record before us except in the testimony of the witness who took such recordings or heard them.

Since no relationship of attorney and client existed between the Respondent and those relatives toward whom he directed his humiliating and concealed attacks over the telephone, he clearly had no intention of seeking any financial gain. However, the proof is clear that the doctor suffered the loss of about $1,000 in undertaking to discover the identity of the person who was making the calls and an estimated $10,000 in loss in his professional business. The Respondent profited nothing in a financial way. He apparently was not seeking financial gain, but merely the satisfaction of revenge by annoying and harassing those of his own blood, solely for some social slight he believed he had suffered.

We do not find it necessary to undertake to repeat here the vulgar, obscene and unworthy language transmitted by Respondent. The fact that Respondent undertook to conceal his identity, and did conceal it for weeks, is almost as despicable as the character of his phone calls. He appears to have been lacking in courage and also a sense of common decency which is so necessary for a member of the Bar. We think that both the letter and spirit of Canon 29 of the Canons of Judicial Ethics of the American Bar Association, which has previously been adopted by us, were violated by the Respondent. This Canon requires a lawyer to strive at all times to uphold the honor and to maintain the dignity of the legal profession.

Respondent is only slightly over thirty years of age and married. There is no evidence that he was suffering from financial difficulties. We think his conduct clearly deserves a penalty such as should tend to make him more discreet in the future.

The recommendation of the Executive Committee is hereby approved and adopted with the hope that Respondent will never again be guilty of similar conduct.