2003 OK 31

**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Earl W. ARNOLD, Respondent.**

**No. SCBD 4305.**

Supreme Court of Oklahoma.

March 18, 2003.

Rehearing Denied June 30, 2003.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

William F. Smith, Gladd, Smith, Harris & Rounds, P.A., Tulsa, OK, for Respondent.

HARGRAVE, J.

¶ 1 This disciplinary proceeding is brought under Rule 6 of the Rules Governing Disciplinary Procedure, 5 O.S. ch. 1, app. 1–A (Supp.1999). The Respondent Earl W. Arnold is a member of the Oklahoma Bar Association, with an official roster address of: Earl W. Arnold, OBA # 335, 717 South Houston, Suite 302, Tulsa, Oklahoma 74127. Mr. Arnold has asked for oral argument before this Court. The motion for oral argument is denied.

¶ 2 The Bar charged Respondent with numerous violations of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. Ch. 1, App. 3–A (Supp.1999), stemming from two grievances: one filed by Pat West, who claimed that Respondent failed to pay her $12,500.00 of a judgment debt that he had collected on her behalf, and the other filed by 87–year–old Everett Davenport claiming that Respondent refused to provide an accounting for and refused to return more than $290,000.00 entrusted to him by Mr. Davenport and his wife, Carrie.

¶ 3 The facts were highly contested in the Davenport matter and the Respondent argues that the charges have not been proved by clear and convincing evidence. A great deal of controversial testimony was introduced regarding whether or not the Respondent properly created and maintained trust accounts at Charles Schwab investment company for the Davenports, and concerning the creation and execution of an "Affidavit of Conveyances" by which Mr. Davenport was purported to give $200,000.00 to the Respondent as a gift. However, we need not decide those issues in the present matter because the Bar proved by clear and convincing evidence that the Respondent converted monies belonging to Pat West and the Davenports.

## I. THE PAT CUMMINGS WEST COMPLAINT

¶ 4 In late 1989 or early 1990, the Respondent received a check for payment of a judgment in the amount of $25,000.00 awarded to Ms. Pat West. Respondent claimed an attorney's lien in the amount of $12,500.00, and owed $12,500.00 to Ms. West. The Respondent deposited Ms. West's $12,500.00 into his purported attorney trust account at Bank of Oklahoma (BOK), styled: Earl W. Arnold, Trust, Account No. 424707025.

¶ 5 Respondent wrote a $12,500.00 check from his BOK account to Pat West on January 24, 1990. Ms. West received the check six months later and learned that the bank would not honor the check because it was stale. In 1994, Ms. West filed a grievance with the Oklahoma Bar Association. Respondent represented to the Bar's investigator that the $12,500.00 owed to Ms. West was still in his BOK Trust Account and had remained there since its initial placement in that account. In support of this claim, Respondent furnished a bank statement showing the balance in the BOK account on March 1, 1995 to be in excess of the amount claimed by Ms. West.

¶ 6 Respondent also showed the Bar's investigator a cashier's check dated March 10, 1995, made payable to Pat West in the sum of $12,500.00, reflecting Earl W. Arnold, Trust, No. 424707095, as the remitter. In reliance on the representations made by Mr. Arnold, the Professional Responsibility Commission dismissed the grievance.

¶ 7 During investigation of the Davenport matter, the Bar discovered that the Respondent's so-called "trust account" at BOK was not an attorney trust account all, but rather was an interest-bearing personal checking account owned by the Respondent. In previous trust accounting certificates filed with the Bar on May 11, 1994 and November 20, 1994, the Respondent had certified that the account was a valid client trust account and that he was in substantial compliance with the requirements for trust accounting records and procedures as set forth at Rule 1.15, ORPC.

¶ 8 Further, contrary to his representation that the Pat West money had remained in his trust account the entire time, the Bar discovered that just a few days before Respondent obtained the cashier's check payable to Pat West, the balance in his BOK account was only $944.33. Only after deposit into his BOK account of a $51,000.00 check from the Davenports were there sufficient funds in the account to cover the check to Pat West. The Respondent converted Ms. West's $12,500.00 by spending it out of his BOK account for other purposes. Respondent then used the Davenport trust money to fund the cashier's check to Pat West.

## II. THE DAVENPORT COMPLAINT

¶ 9 In early 1995, the Respondent had several discussions with Everett and Carrie Davenport, an elderly couple living in Haskell, Oklahoma, about creation of a trust, for which Respondent would serve as trustee. The Respondent previously had prepared Wills for the Davenports and two Durable Powers of Attorney in July, 1992, in which he was named attorney-in fact for Mr. and Mrs. Davenport. The Respondent drafted the trust indenture creating the Everett R. Davenport and Carrie E. Davenport Family Trust, which was signed on March 27, 1995, naming the Respondent as trustee.

¶ 10 The Bar subpoenaed Respondent's bank accounts which established that 1) the BOK account was not set up as an attorney trust account, 2) the Respondent deposited into his personal accounts funds designated by the Davenports for establishment of their trust, and 3) the Respondent wrote personal checks from the accounts using the Davenport trust funds.

¶ 11 The Bar's evidence established that the following transactions occurred with respect to the Davenports' trust funds: On February 27, 1995, check # 5303 was drawn on the account of Everett R. or Carrie E. Davenport, payable to "Earl W. Arnold—Trust" in the amount of $51,000.00. The memo portion of the check stated: "set up trust funds." On February 27, 1995, Mr. Arnold deposited the $51,000.00 into his BOK account. Immediately prior to the deposit, the balance in the BOK account was $944.33.

¶ 12 Mr. Arnold immediately wrote the following checks from the BOK account: 1) a check payable to Earl W. Arnold on February 27, 1995 in the amount of $200.00, 2) a check payable to Earl W. Arnold on February 28, 1995 in the amount of $5,000.00, 3) a check transferring $20,000.00 to Respondent's credit union checking account on February 28, 1995, 4) a check dated March 9, 1995 for $74.00 payable to "Dist Ct. Cl," and 5) a check for $12,500.00 to purchase the cashier's check in the Pat West matter on March 10, 1995. The balance in the BOK account on March 12, 1995 was $14,464.90. No other deposits were made to the BOK account until another Davenport check, in the amount of $99,279.92 was deposited on April 12, 1995.

¶ 13 As noted above, on February 28, 1995, Respondent transferred $20,000.00 from the BOK account to his credit union preferred-plus checking account which Respondent owned jointly with his wife. Prior to Respondent's deposit of the $20,000.00 into his credit union checking account, the balance was $8.00. After deposit of $20,000.00 into the account, the Respondent wrote numerous personal checks including: 1) purchase of a cashier's check payable to BankOklahoma Mortgage Corp. on March 6, 1995 in the amount of $5,154.54, 2) a cashier's check dated March 14, 1995 to Erich Kuhnel in the amount of $4,300.00, noting "1991 Geo Storm," and 3) a check to Citizens Security Bank on March 6, 1995 in the amount of $3,210.04.

¶ 14 From the credit union checking account, Arnold also issued a check payable to Charles Schwab on March 4, 1995, in the amount of $5,063.72, referenced as being to set up an investment 800 account, account number 1211–5131–I. The Charles Schwab account was set up solely in the Respondent's name. Respondent transferred $7,500.00 from the credit union checking account to his credit union savings account, also jointly owned with his wife, by two transactions on March 3 and March 6. The only other deposits into the credit union checking account were for $2,050.00 and $11,500.00 on March 9, which appear to be for legal fees. The balance in the credit union checking account was $1,708.92 on March 31, 1995.

¶ 15 On May 28, 1997 Mr. Arnold responded by letter to the Bar, stating that the $51,000.00 was deposited to the BOK account on March 1, 1995 and was then "escrowed/set aside" in a credit union savings account on the same date "for interest accumulation, etc." He stated that the $51,000.00 was then transferred in two amounts to the Schwab investment account: $5,000 on March 3, 1995 and $46,000.00 on April 12, 1995. Respondent maintained that the money was "non-attorney-client trust property."

¶ 16 These representations are false. The $51,000.00 was deposited to the Respondent's BOK account and $20,000.00 was transferred to his credit union preferred plus *checking* account, which was a jointly owned with his wife. There was no deposit of $51,000.00 to either credit union account. The balance of the credit union savings account was $6,508.49 on March 26, 1995, and the balance of the credit union checking account was $0.00 by March 20, 1995. Thus, the $46,000.00 allegedly transferred to Charles Schwab on April 12, 1995 could not have come from the Davenport's $51,000.00.

¶ 17 Mr. Arnold maintains that he was not acting as attorney for the Davenports and that the money was not client money. This argument is without merit. Mr. Arnold prepared the Davenport trust agreement and was paid for doing so. Mr. Arnold's brief to this Court states that he performed professional services for the Davenports when he created the trust. Regardless of whether Mr. Arnold was dealing with client funds or trust funds, the Bar proved by clear and convincing evidence that the Respondent converted $51,000.00 belonging to the Davenports. The evidence established that the $51,000.00 was given to the Respondent to be held in trust. The $51,000.00 is not part of the $200,000.00 "gift" in controversy.[1]

---

1. The Affidavit of Conveyances, which is the subject of district court litigation, involved three Davenport checks: 1) the $51,000.00 check, which was to be placed in an account and held as property of the irrevocable Everett R. Davenport and Carrie E. Davenport Family Trust; 2) a check for $99,279.92, part of which was to be placed in the trust and part of which was "gift-

¶ 18 Further, the Respondent deliberately deceived the Davenports about their "trust" accounts and the nature of the investments that he purportedly was making on their behalf. Respondent submitted to Mr. Davenport a series of fabricated Schwab financial statements that showed the Schwab investment account as owned by "Earl W. Arnold, for the benefit of Everett and Carrie Davenport." In fact, there was no Davenport trust account at Charles Schwab. The account was maintained solely in the name of the Respondent. The Charles Schwab investment company had no record of the Davenports.

¶ 19 There are no mitigating circumstances. Respondent has shown no remorse about his handling of the funds belonging to the Davenports, and does not admit that he should have handled the funds differently. Respondent argues that the allegations have not been proven by clear and convincing evidence, thus failing to meet the standard necessary for disbarment. In bar disciplinary actions, this Court does not function as a reviewing tribunal, but rather as a licensing court acting in the exercise of its exclusive original jurisdiction. *State ex rel OBA v. Perry*, 1997 OK 29, 936 P.2d 897. Because the findings of fact made by the trial panel are not binding here, this Court must pass on the sufficiency and weight of the evidence. *State ex rel. OBA v. Raskin*, 1982 OK 39, 642 P.2d 262.

¶ 20 We find the following established by clear and convincing evidence:

1) The Respondent's BOK account was not an attorney trust account and was in violation of Rule 1.15 ORPC.

2) The Respondent converted $12,500.00 belonging to his client Pat West. Respondent failed to maintain the client's money in a trust account, and did not preserve the funds belonging to his client. Respondent used the Davenport trust money to pay Pat West, five years after he had received the money belonging to Ms. West. Mr. Arnold's argument

that the delay was Ms. West's fault is without merit—the Respondent failed to preserve the money owed to his client as he had previously spent the money belonging to her from his BOK account.

3) Respondent converted the Davenport's $51,000.00 entrusted to him to set up the Davenport trust, and falsely represented to them that the money was in a trust account at Charles Schwab.

4) Respondent acted as attorney for the Davenports in drawing up the Davenport trust agreement.

5) Respondent violated his fiduciary duty to Mr. and Mrs. Davenport.

¶ 21 Conversion of client funds warrants disbarment. *State ex rel. Oklahoma Bar Association v. Meek*, 1994 OK 118, 895 P.2d 692. We said in *Meek* that commingling takes place when client monies are combined with the attorney's personal funds. Conversion occurs when a lawyer applies a client's money to a purpose other than that for which it was entrusted to the attorney. Theft by conversion occurs when an attorney purposefully deprives a client of money by way of deceit and fraud. A finding that the attorney intentionally committed such an act requires imposition of the harshest discipline—disbarment.

¶ 22 Conversion of trust or estate funds by an attorney acting in the capacity of trustee or administrator also warrants the severest discipline. Contrary to Respondent's argument that he was not acting as the Davenports' attorney, it is not necessary that the relationship of attorney and client exist before discipline may be imposed for misconduct. In *State ex rel. OBA v. Bradley*, 1987 OK 78, 746 P.2d 1130, we disbarred an attorney for, among other things, violation of his fiduciary duties while acting as trustee. We said that misconduct by a member of the Bar in order to justify disciplinary action need not occur while the relationship of attorney and client exists.[2] We referred to

ed" to Mr. Arnold; 3) a check for $140,709.80, all of which was "gifted" to Mr. Arnold.

2. *See also, State ex rel. Oklahoma Bar Association v. Flanery*, 1993 OK 97, 863 P.2d 1146; *State ex rel. Oklahoma Bar Association v. Brandon*, 450 P.2d 824 (Okla.1969); *State ex rel. Oklahoma Bar*

Rule 1.3, RGDP, which provides grounds for disciplinary action for acts contrary to prescribed standards of conduct. Rule 1.3 provides:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, *whether in the course of his professional capacity, or otherwise,* which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action . . . ." (emphasis added).

¶ 23 In *State ex rel. Oklahoma Bar Association v. Myers,* 1967 OK 44, 424 P.2d 975, we held that commingling the funds belonging to an estate with individual funds warranted disbarment. In *Myers,* checks payable to and belonging to the estate were deposited to the attorney's personal account, and he wrote personal checks on the estate checking account. No accounting was made in the estate for almost six years. The attorney testified that he knew that it was improper to commingle the estate funds with his own funds but that the sole heir was satisfied with the arrangement. Myers also prepared a fictitious order that purported to empower him to encumber property of the estate. Myers was disbarred.

¶ 24 In *State ex rel. OBA v. Wallace,* 1998 OK 65, 961 P.2d 818, 826, involving disciplin-

ary action against a lawyer who was serving as trustee of a trust we said:

"A trustee is a fiduciary of the highest order in whom the hope and confidence of the settlor are placed with the expectation that the trustee will exercise the obligations of the office for the exclusive benefit of the *cestui que trust.* A trustee always owes to the *cestui que trust uberrima fides* ["the most abundant good faith, absolute and perfect candor or openness and honesty," Black's Law Dictionary, (Revised 4th ed.1968) ]. When a legal practitioner occupies the position of trustee and breaches that fiduciary obligation through mismanagement of the trust, that practitioner brings the legal profession into disrepute and, as a result, subjects himself to bar discipline. Strong and unswerving commitment to the value of fiduciary loyalty is a *sine qua non* of the personal characteristics lawyers must have."

¶ 25 We have conducted a *de novo* review of the entire record and find that the clear and convincing evidence establishes that the Respondent engaged in professional misconduct in violation of Rules 1.3, 1.4, 1.15, 8.1 and 8.4(c)(d) of the ORPC and Rules 1.3, 1.4 and 5.2 of the RGDP and that such misconduct warrants disbarment from the practice of law.[3] Accordingly, we order that the Re-

*Association v. Martin,* 410 P.2d 49 (Okla.1965); and *State ex rel. Oklahoma Bar Association v. Ablah,* 348 P.2d 172 (Okla.1959).

**3.** Rules 1.3 RGDP appears at ¶ 20.
Rule 1.4  RGDP Monetary Transactions
(a) All members of the Bar who are required under the Oklahoma Rules of Professional conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided. [Rule contains reporting requirements] Failure of any lawyer to respond giving the information requested will be grounds for appropriate discipline.
(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property on demand shall be deemed a conversion. This does not apply to the retention f money or

other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.
(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment . . .
Rule 5.2  RGDP Investigations
After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either . . . (2) file and serve a copy of the grievance . . . upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. . . .
Rule 8.1.  ORPC Bar Admission and Disciplinary Matters
An applicant for admission to the bar, or a lawyer . . . in connection with a disciplinary matter, shall not:

spondent be disbarred and his name stricken from the roll of attorneys.

¶ 26 The Complainant has filed an application to assess costs in the amount of $4,890.13, including two transcripts in the amounts of $1,783.00 and $1,548.50. The Respondent filed an objection to some of the costs, arguing that under the rules for costs in civil cases, some of the costs would not be permissible, citing 12 O.S. § 942. Respondent objects to costs of investigation expenses, document costs, postage and telephone expenses, expert witness fee, and transcript costs.

¶ 27 In *State ex rel OBA v. Armstrong*, 1992 OK 130, 863 P.2d 1107, an attorney attempted to recover costs and attorney fees against the Bar Association, citing 12 O.S.

§§ 978 and 1011, and 10 O.S. § 15.1, after this Court denied discipline against the attorney. In denying the application, we said that the statutes cited by the attorney were not authority for purposes of bar disciplinary proceedings where this Court has acted in its capacity of regulating the Bar Association. *Armstrong at 1109*. We noted that proceedings before this Court were not an appeal, but an exercise of this Court's original and exclusive jurisdiction. We said that the Oklahoma Pleading Code governs the procedure in the district courts, but does not include this Court's exercising original jurisdiction in a Bar proceeding. *See also, State ex rel. OBA v. Minter*, 1998 OK 59, 961 P.2d 208 where we held that mileage rates for subpoenaed witnesses at $.15 per mile did

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

Rule 8.4.   ORPC Misconduct

It is professional misconduct for a lawyer to:
. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice

Rule 1.15.   ORPC Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in·dispute shall be kept separate by the lawyer until the dispute is resolved.

(d) **Trust Accounts.** A lawyer or law firm may create and maintain an interest-bearing demand trust account and may deposit therein all funds of clients to the extent permitted by applicable banking laws, that are nominal in amount or are on deposit for a short period of time. Maintenance of such trust account balances in noninterest-bearing trust accounts will still be permitted. The attorney electing to utilize interest-bearing trust accounts shall comply with the following provisions:

(1) the Interest–Bearing Demand Trust Account may be established with any bank or savings and loan association authorized by federal or state law to do business in Oklahoma and insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation;

(2) the rate of interest payable on any interest-bearing demand trust account shall not be less than the rate paid by the depository institution to regular, nonattorney depositors. Higher rates offered by the institution to customers whose deposits exceed certain time or quantity minimums, such as those offered in the form of certificates of deposit, may be obtained by a lawyer or law firm so long as there is no impairment of the right to withdraw or transfer principal immediately (except as accounts generally may be subject to statutory notification requirements), even though interest may be sacrificed thereby;

(3) the depository institution shall be directed: [directions omitted]

not apply to mileage rates for members of the Professional Responsibility Tribunal, and the attorney was directed to pay such costs at the rate of $.30 per mile.

¶ 28 Rule 6.16 RGDP provides that where discipline results, the cost of the investigation, the record and disciplinary proceedings shall be surcharged against the disciplined lawyer. The Respondent is ordered to pay the costs of the proceeding, in the amount of $4,890.13 within ninety (90) days after this opinion becomes final.

**RESPONDENT DISBARRED. COSTS CHARGED TO RESPONDENT.**

¶ 29 CONCUR: WATT, C.J., OPALA, V.C.J., HODGES, LAVENDER, KAUGER, WINCHESTER, JJ.

¶ 30 DISQUALIFIED: SUMMERS, BOUDREAU, JJ.